287 So.2d 480 (1973)
GULF STATES THEATRES OF LOUISIANA, INC. et al.
v.
John A. RICHARDSON and George W. D'Artois.
No. 54044.
Supreme Court of Louisiana.
December 3, 1973.
Rehearing Denied January 11, 1974.
*482 John A. Richardson, Dist. Atty., Charles R. Lindsay, Asst. Dist. Atty., W. Gene Carlton, Asst. City Atty., for defendants-respondents.
Phillip A. Wittmann, Anthony M. DiLeo, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, John M. Madison, Jr., Wilkinson, Carmody & Peatross, Shreveport, Hopkins P. Breazeale, Jr., Breazeale, Sachse & Wilson, Baton Rouge, for plaintiffs-relators.
BARHAM, Justice.
The plaintiffs, Gulf States Theatres of Louisiana, Inc., the owner of the Don Theatre in Shreveport, Louisiana, and a number of other motion pictures theatres, United Artists Corporation, the owner of the movie film "Last Tango in Paris", and Joe Gianforte, Manager of Gulf States Theatres' Don Theatre, brought suit against the District Attorney for the Parish of Caddo and the Commissioner of Public Safety of the City of Shreveport, seeking to enjoin the defendants from enforcing R.S. 14:106A(2) and (3). The plaintiffs commenced the showing of the nationally publicized and distributed motion picture, "Last Tango in Paris" in Shreveport on September 28, 1973. The first showing of said movie on that date was to a full capacity crowd. During the second showing of the motion picture on the same date, plaintiff Gianforte, was arrested and charged with violation of R.S. 14:106A(2). At the same time, pursuant to a search warrant issued by a judge of the First Judicial District Court for the Parish of Caddo, police authorities seized four twenty-six inch reels of film entitled "Last Tango in Paris".
*483 The following day, after the first showing on that day of "Last Tango in Paris" from other reels of film, the plaintiff Gianforte, was again arrested and the reels of film which had produced on screen the movie "Last Tango in Paris" were seized. The copy of the film seized on September 29 was an exact copy of the film used on September 28. On that date, September 29, the plaintiffs sought relief from the United States District Court, Western District of Louisiana, Shreveport Division, and were granted a temporary restraining order prohibiting further arrest of Gianforte and further seizure of any film.
When the temporary restraining order issued by the federal district court expired, the plaintiffs filed this suit in the First Judicial District Court, Caddo Parish, seeking a temporary restraining order and a preliminary and permanent injunction, enjoining and restraining and prohibiting the District Attorney and the Commissioner of Public Safety or their representatives from interfering with the showing of "Last Tango in Paris" at the Don Theatre in Shreveport until there could be a final judicial determination of the obscenity issue in an adversary hearing. The district court on the same date, October 4, denied plaintiffs' petition for a temporary restraining order and injunctive relief. Two criminal charges were then and are now pending in Caddo Parish against one of the plaintiffs, Gianforte.
The plaintiffs then applied to this Court on that same date for relief under our supervisory jurisdiction. We granted writs of prohibition and mandamus to the district judge, ordering him to restrain and enjoin the defendants and their agents from making seizures of prints of the film "Last Tango in Paris", and from otherwise interfering with its showing at the Don Theatre in Shreveport, pending a judicial determination of the issues. Our docket No. 54,009, October 4, 1973, 283 So.2d 493. Upon the district court's receipt of that order from our Court on October 4, the restraining order was issued and a rule to show cause on the 9th day of October why a preliminary injunction should not be entered was served upon the defendants.
On October 5, the defendants answered and reconvened, praying for a permanent injunction against the plaintiffs from further showing and exhibiting the film "Last Tango in Paris", "in accordance with provisions of R.S. 13:4711, et seq." (nuisance statutes). The trial court issued a rule to show cause on the same date fixed for the other rule why this permanent injunction should not issue against the plaintiffs, defendants in reconvention, which would permanently enjoin them from further showing and exhibiting "Last Tango in Paris". The reconventional demand is accompanied by a certificate, signed by the District Attorney and the Commissioner of Public Safety, alleging on facts and allegations true and correct to the best of their knowledge, information and belief, that the affiants viewed the motion picture complained of, believed it to be obscene, and that the showing of said movie constituted the continuous conducting of a public nuisance under the laws of Louisiana.
On October 9 trial was begun on the main and reconventional demands. At the conclusion of the trial on October 12, 1973, the demands of plaintiffs in rule for injunctive relief against the defendants were rejected. The court entered a judgment in favor of the plaintiffs in reconvention, the District Attorney, and the Commissioner of Public Safety, against the plaintiffs, defendants in reconvention, permanently enjoining the latter from showing "Last Tango in Paris", beginning at 9:30 P.M. that day, October 12, 1973.
On October 16, the plaintiffs, defendants in reconvention, again applied to this Court under its supervisory jurisdiction and this Court granted a writ of certiorari, ordering the record of the proceedings below forwarded to this Court, and assigning the matter for hearing on October 26, our docket No. 54,044 (October 18, 1973), 283 So.2d 762. The order, which is on the *484 usual certiorari form of this Court, further ordered all proceedings in the First Judicial District Court to be stayed and suspended.
On October 18, the plaintiff Gianforte, applied to this Court for review of certain preliminary rulings in the two criminal proceedings pending against him in the criminal section of the First Judicial District Court. This Court responded by order staying all proceedings in the criminal actions pending a final action by this Court in the civil proceeding which is now before us, our docket No. 54,049 (October 18, 1973).
Posed for our consideration are two issues of constitutionalitythat of R.S. 13:4711-4717 and that of R.S. 14:106. We will first address ourselves to the constitutionality of R.S. 13:4711-4717, since that issue will also be decided by this Court in the case on this same docket, State of Louisiana and the Parish of Caddo v. Gulf States Theatres of Louisiana, et al., 287 So.2d 496, on remand from the United States Supreme Court. The case on remand is not only to be considered in light of Miller v. California, 413 U.S. 15, 93 S. Ct. 2607, 37 L.Ed.2d 419 (1973), and its companion cases, but also in light of Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973), Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973), and Alexander v. Virginia, 413 U.S. 836, 93 S.Ct. 2803, 37 L. Ed.2d 993 (1973).
The plaintiffs' position is that after the beginning of a financially successful showing of the motion picture "Last Tango in Paris", they were, and have remained (except for our stay order), permanently enjoined from showing any version of that motion picture. Plaintiffs allege that this motion picture has been playing in approximately 350 cities throughout the United States and has been viewed by approximately 5,000,000 people. Plaintiffs further allege that they were receiving revenue in excess of $1,000 per day from the showing of the film and therefore they have been, and will be, under a permanent injunction, deprived of revenue in excess of $1,000 per day.
We are here concerned with the State's right to regulate obscene expression. Every exercise of the State's right to control obscenity "* * * implicates questions whether the procedures * * * were adequate to avoid suppression of constitutionally protected publications. `* * * [T]he line between expression unconditionally guaranteed and speech which may legitimately be regulated, suppressed, or punished is finely drawn * * *. The separation of legitimate from illegitimate speech calls for * * * sensitive tools * * *'. Speiser v. Randall, 357 U.S. 513, 525, 1472, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460. It follows that, under the Fourteenth Amendment, a State its not free to adopt whatever procedures it pleases for dealing with obscenity as here involved without regard to the possible consequences for constitutionally protected speech." Marcus v. Search Warrant, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961).
Keeping constantly in mind, then, that under consideration here is the delicate line of demarcation between unconditionally guaranteed freedom of speech and the very limited exceptions under which speech and expression may be legitimately regulated or suppressed, we examine the attacks upon the constitutionality of R.S. 13:4711-4717.
A history of the development of the statutes casts light upon the consideration of the constitutional attacks. The statutes originated with Act 47 of 1918, which was an act to declare houses of prostitution and their contents nuisances and to provide means to enjoin and abate them. All seven provisions, R.S. 13:4711-4717, remained unchanged for over 40 years. In 1960 the Legislature attempted by Act 201 to amend Section 4711 to include obscenity with prostitution in the definition of a nuisance.
*485 Chapter 32 of Title 13 of the Revised Statutes of 1950 is titled "Particular Classes of Actions and Cases". Part I is titled "Abatement of Public Nuisances". Subpart A, titled "Houses of Prostitution", contains these statutes which remained as originally enacted when the Revised Statutes of 1950 were adopted. They provide, as the title indicates, only a civil action for the abatement of the nuisances of houses of prostitution. Subpart B of Chapter 32, Part I, is a group of statutes designed to control and to abate the public nuisance of gambling houses. The control of prostitution, as indicated, originated in 1918. Two years later the control of gambling through abatement as a public nuisance was legislated. Disorderly houses (when properly defined), houses of prostitution, and gambling houses have always been subject to control, regulation, and suppression under the police power of the state. Moreover, the control of nuisances in general is usually governed in some part by police regulations. Analogous to the common law nuisance is our Civil Code Article 669, which states that insufferable inconveniences are regulated and governed by the custom of the place and the "rules of the police". At common law, nuisances per se include those activities which are forbidden by criminal law and sanctions.
Through development of a special civil action for the abatement of the nuisance of prostitution, our Legislature provided that houses of prostitution could be abated upon the petition of the district attorney or upon the petition and proper affidavit of interested parties. But the control of the act of prostitution is in no wise analogous to the control of obscenity. Although it may be possible to incorporate in some manner under the title "Abatement of Public Nuisances" the control of places where obscene expression is exhibited, published, or otherwise communicated, there is no corollary between control of the nuisance of prostitution and control of expressions which are subject to regulation only when they cross over that fine line into obscenity. A reading of R.S. 13:4711-4717 in light of their development and in light of their original purpose of controlling only the nuisance of prostitution makes apparent the reasons for the numerous attacks upon these statutes when they are used to control obscenity. The provisions must then be examined with careful consideration of the guarantees of freedom of expression afforded by the United States Constitution, Fourteenth and First Amendments, and Louisiana Constitution Article I, Section 3.
R.S. 13:4711 declares any place a nuisance where there exists prostitution or obscenity as defined by the criminal laws of the State. R.S. 13:4712 provides the procedure for an ex parte temporary injunction and for permanent injunction after hearing on a rule nisi to abate the nuisance perpetually. R.S. 13:4713 provides for contempt penalties for violation of any of these provisions relating to the injunction and for lien upon, and seizure and sale of, the property where the nuisance was conducted for the fines imposed upon a finding of contempt. R.S. 13:4714 closes the place where the nuisance existed so that it cannot be used for any purpose for a period of up to one year. R.S. 13:4715 and 4716 provide for bond for release of property and disposition of fines and collection of fees. R.S. 13:4717 provides that judgment as to what constitutes a nuisance "may be based on the general reputation so proven".
The statutes are attacked as being unconstitutional on their face for several reasons. The clear language of R.S. 13:4712 mandates that a temporary injunction "shall" be granted by the judge upon the simple allegation by the district attorney upon information and belief of the existence of obscenity without any requirement of a showing upon probable cause that obscenity is being published in some manner. When the district attorney presents the petition and his verified affidavit, the judge is required without the exercise *486 of discretion to issue a temporary injunction. If one other than the district attorney or other parish official named in the statute brings the action, it is required only that a certificate be obtained from the judge that the applicant is acting in good faith and not for improper purposes. In either instance no adjudicative function at all is required. The statute calls only for a simple ministerial act by the judge. "Shall" is a command leaving no room for discretion. Naquin v. Iberia Parish School Board, 157 So.2d 287 (La.App.3rd Cir. 1963). As the appellate court succinctly stated: "* * * Rather than a judicial mind passing on the relative merits of the petition, the judicial hand is forced by the Legislature to sign a temporary restraining order." State v. Gulf States Theatres of Louisiana, Inc., 255 So.2d 857, 860 (La. App.2nd Cir. 1971).
However, even if the literal wording of the statute, "shall", was construed as not requiring a simple ministerial act by the judge, this Court is still forced to find that there are no standards prescribing the consideration for a judicial determination of whether to issue or to refuse to issue the temporary restraining order. Is judicial determination for issuing the ex parte order made "from specific facts shown by verified petition or by supporting affidavit that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had" C.C.P. Art. 3603. This is the ordinary basis for the issuance of a temporary restraining order. Certainly these Code of Civil Procedure requirements are not sufficient to satisfy the First Amendment requirements. If the court were considering whether a Fourth Amendment warrant for search and seizure was properly issued, it would examine the affidavit for facts to establish probable cause to review the basis for that judicial determination. However, there is no method whereby a requirement of probable cause for a criminal search warrant can be read into a civil statute for abatement of nuisance. So, if it is assumed arguendo that the judge is not mandated to act, but can make a judicial determination to issue or not to issue the ex parte injunction, the statute is nevertheless unconstitutional because no standards are set which govern the judicial determination for the issuance of the ex parte injunction.
Although the State may regulate the dissemination of obscene expression, since obscenity is an exception to the constitutionally protected right of free speech, the State is required to observe stringent safeguards in the exercise of the right to prohibit. The very minimum constitutional standard required before there can be a suppression of an expression alleged to be obscene is an independent judicial finding of probable cause that the expression is obscene and therefore not constitutionally protected speech. Marcus v. Search Warrant, supra; A Quantity of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964); Bantam Books v. Sullivan, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963).
In State v. Eros Cinema, Inc., 262 La. 706, 264 So.2d 615 (1972), we specifically and unanimously determined that there could be no seizure of an allegedly obscene expression without a prior judicial determination of an adequate factual basis for a probability that the expression constitutes obscenity. In that case, as in a number of cases decided by the United States Supreme Court which are cited there, we were considering a seizure under a search warrant for the purpose of criminal prosecution.
In Marcus v. Search Warrant, supra, the court, pretermitting the question of lack of hearing before seizure, held the seizure under the warrant unconstitutional, for the warrant gave total discretion to the executing officers to make an on-the-scene determination of what constituted obscene publications. In Marcus, the court also condemned the issuing of warrants and the seizure of the allegedly obscene materials "* * * on the strength of the conclusory *487 assertion of a single police officer, without any scrutiny by the judge of any materials considered by the complainant to be obscene". That court concluded: "Mass seizure in the fashion of this case was thus effected without any safeguards to protect legitimate expression."
Under our statute, the simple verified affidavit of the district attorney on information and belief gives rise to an immediate order of suppression by injunction of alleged obscenity. This suppression is equally as effective as, and perhaps more onerous than, a seizure under search warrant. Moreover, the order for injunction acts as a mass suppression such as was condemned in Marcus. The order does not suppress only one copy of film; it suppresses all copies of the film. The statute on its face permits this suppression without any prior judicial determination, even ex parte, that the material to be suppressed is probably obscene in fact. The lack of standards for a judicial determination of probable cause is contrary to the numerous United States Supreme Court pronouncements that this is a minimal requirement for constitutionality of statutes providing for suppression of alleged obscenity before an adversary hearing. There is no provision in our statute requiring an independent judicial determination of the probability of obscenity before an ex parte order of suppression issues. While a statute not unconstitutional on its face may be unconstitutionally enforced, a statute which is unconstitutional on its face cannot be constitutionally enforced.
We are constrained to find that R.S. 13:4712 is unconstitutional on its face because it authorizes the total ex parte suppression of alleged obscenity without any independent judicial determination on facts that the expression is probably obscene.
We examine R.S. 13:4711-4717 for constitutionality to determine if these statutes provide for prior restraint without notice or trial. Alternatively, assuming that prior restraint can be had ex parte, we examine these statutes to determine if adequate safeguards for speedy judicial adversary hearing are provided.
We now address ourselves to a consideration of prior restraint in the context in which it is used in much of the current jurisprudence. The question is bifurcated: (1) Can there be prior restraint of future publication, circulation, or exhibition of an obscene expression in a civil proceeding without notice and hearing after the initial publication of that expression? (2) If so, what are the limitations and safeguards required for constitutionality of such restraint?
Times Film Corporation v. Chicago, 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961) is often cited for the broad principle that prior restraint without notice and hearing may be had. The limited holding of Times Film Corporation is: "Petitioner's narrow attack upon the ordinance does not require that any consideration be given to the validity of the standards set out therein. They are not challenged and are not before us." The court posed the one question it answered: "* * * whether the ambit of constitutional protection includes complete and absolute freedom to exhibit, at least once, any and every kind of motion picture. It is that question alone which we decide." The court, with four justices dissenting, held the ordinance not void on its face under such an attack.
In Bantam Books v. Sullivan, supra, the court said: "Any system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity. * * * We have tolerated such a system only where it operated under judicial superintendence and assured an almost immediate judicial determination of the validity of the restraint. * * *"
Then, in Freedman v. Maryland, 380 U. S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), the limited question before the court in Times Film is reexpressed from Bantam Books to be "* * * `whether a prior restraint *488 was necessarily unconstitutional under all circumstances'". (Emphasis from Bantam Books.) The argument in Freedman was that if it was accepted as law that the first showing of a film may be restrained under proper guidelines and judicial protection, the provision for censorship in a Maryland statute was an "invalid prior restraint because, in the context of the remainder of the statute, it presents a danger of unduly suppressing protected expression". It was there said: "Applying the settled rule of our cases, we hold that a noncriminal process which requires the prior submission of a film to a censor avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system. * * * Any restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution. * * * the procedure must also assure a prompt final judicial decision, to minimize a deterrent effect of an interim and possibly erroneous denial of a license."
However, in A Quantity of Books v. Kansas, supra, a Kansas statute authorized the seizure of allegedly obscene books before an adversary determination of their obscenity and their destruction by burning or other means after that determination. Mr. Justice Brennan, author of that opinion, who also wrote the majority opinions in Marcus v. Search Warrant, Bantam Books v. Sullivan, and Freedman v. Maryland, cited those three cases, as well as Kingsley Books, and finally determined that the failure to afford an adversary hearing made the procedure leading to the order of seizure of all copies of seven specified novels unconstitutional.
Kingsley Books v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957) is a much misunderstood opinion. First, that case does not involve prior restraint without an adversary hearing although the language of the United States Supreme Court may lead one to believe such to be the case. There, a petition was filed by the chief legal officer of the City of New York to enjoin several defendants from distributing a series of allegedly obscene booklets. No restraint was sought in that case except after an adversary hearing in response to the rule nisi, issued with the notice of the suit for injunctive relief, to show cause within four days why the defendants should not be enjoined pendente lite from distributing the books. The state court concisely held that "* * * when the courtafter an adversary hearingis able to read and examine the publications objected to, and acts judicially to enjoin their distribution, it is apparent that there is no `previous restraint' in the genuine historical and constitutional sense of that term". Burke v. Kingsley Books, 208 Misc. 150, 142 N.Y.S.2d 735 (1955). The United States Supreme Court in Kingsley recognized that the adversary hearing under the rule to show cause was dispensed with because the "appellants consented to the granting of an injunction pendente lite and did not bring the matter to issue promptly, as was their right under subdivision 2 of the challenged section, which provides that the person sought to be enjoined `shall be entitled to a trial of the issues within one day after joinder of issue and a decision shall be rendered by the court within two days of the conclusion of the trial'". The protection of the preliminary adversary hearing before even a temporary restraining order could issue, a requirement of joinder of issue for final determination within one day after issue was joined, and the requirement that judgment be rendered within two days were actually the basis for the holding in Kingsley that reasonable safeguards were afforded for protection of First Amendment rights in that statutory scheme for control of obscenity.
In State v. Eros Cinema, supra, this Court found that there was no way to preserve the best evidence in a criminal prosecution for exhibiting an obscene film except *489 upon seizure of the film under search warrant. For this reason, we held that such a seizure is permissible in the limited quantity necessary where there are proper safeguards for establishing probable cause and for providing quick judicial determination on the merits, review, and final judgment. Our reason for believing this brief ex parte seizure, or, if you will, temporary suppression, was necessary in that criminal prosecution does not exist in this civil suit to abate a nuisance. We found there that in a criminal prosecution the Fifth Amendment right against self-incrimination would not permit a subpoena duces tecum. However, in a civil proceeding under the nuisance statute a subpoena duces tecum may be used to obtain materials desired as evidence in the proceeding. The compelling reasons for permitting a seizure for evidence under a constitutional warrant as provided in the Fourth Amendment, do not exist in a proceeding wherein suppression of the showing of the particular film alleged to be obscene and the closing of the theatre in which it is shown are sought.
A thorough consideration of these cases leads us to conclude that in a civil proceeding to abate an obscene expression as a nuisance there can be no prior restraint without an adversary judicial adjudication.
Where prior restraint is permitted by statutes in such a case as this, the statutes are unconstitutional because the safeguards which must follow as set forth in numerous United States Supreme Court opinions are not provided in the statutes. In Marcus, Bantam Books, Freedman, A Quantity of Books, and Lee Art Theatre v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968), the overriding holding is that there can not be, under a licensing statute, a statute for injunction or destruction, or a criminal prosecution, prior restraint without notice and hearing by seizure under search warrant or suppression by other method, unless immediate judicial determination in an adversary hearing is available, and a speedy final judicial determination of the issue is provided.
Under the statutes at hand, the first hearing on the question of the actual obscenity of the suppressed expression is by rule to show cause five days after the initial suppression. Since the form of suppression is injunction, under our law there can be no suspensive appeal from the trial court's ruling. C.C.P. Art. 3612. An appeal from a final injunction is subject to the same delays as other appeals. Because of these delays, in a case such as this, great injustice may result if the expression originally suppressed by temporary restraining order is finally found to be a constitutionally protected expression. In the instant case, we permitted plaintiffs to by-pass the Court of Appeal on application for exercise of the Court's supervisory jurisdiction in order to minimize the delay.
We said in Eros Cinema, supra, that we would require a hearing into the obscenity issue under seizure by search warrant within two days and a judgment at the trial court level 24 hours thereafter, and that this Court would treat application for writs from an adverse ruling as remedial, thus assuring a speedy final determination of the issue. Here, in this civil proceeding none of these protections are afforded, although the consequences which flow from the suppression may actually be graver and more onerous than those under our criminal statute. Even if prior restraint were permissible, the statute would be unconstitutional because it does not afford the safeguards for protection of First Amendment rights.
We have reserved for last consideration in this discussion of prior restraint the most serious constitutional defect in the statutes. This consideration arises under the original and historical application of the doctrine of prior restraint.
Actually, prior restraint, in the context of its historical origin and as discussed in most early jurisprudence, is defined *490 as that restraint or suppression of an expression without judicial determination of the right to suppress before any publication, any exhibition, any communication of that expression. The prohibition against prior restraint predates even our Bill of Rights. In 70 Columbia L.Rev. 1403, 1409, Blackstone's theory of the prohibition against previous restraint involving freedom of the press is discussed. Blackstone took the view that there could be no previous restraints upon publications, saying: "Every freeman has an undoubted right to lay what sentiments he pleases before the public; to forbid this is to destroy the freedom of the press; but if he publishes what is improper, mischievous, or illegal, he must take the consequences of his own temerity." The conclusion of the writer of that article is that Blackstone's distinction between prior restraints against publication and punishment subsequent to publication has survived and is applicable to the present legal doctrine. The question under this historical and very limited expression of the doctrine prohibiting prior restraint is whether an evidentiary hearing and judicial determination are required before an expression which is obscene can be suppressed, prohibited, or restrained even before it is published, exhibited, or in any manner communicated. We are compelled to answer that, under this limited definition of prior restraint, suppression cannot be had without notice and a hearing.
In Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), the court, in language broader than required by the issue presented to it, gave three examples of exceptions to the application of the doctrine, including attempts to control obscene publications. In Burstyn v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952), the court appeared to remove the obscenity exception, and, finally, in Kingsley Books v. Brown, supra, the court correctly observed that the Near case had not concerned obscenity, and the exception of obscenity was discarded.
The doctrine of prohibiting prior restraint of expression without notice and hearing before the expression is ever published has more validity today than even in much earlier times when it was designed to prohibit the government from destroying printing presses so there could be no future publication. If these statutes do in fact prohibit expression without notice and hearing even before the expression is communicated, published, or exhibited, they violate the constitutional right of free expression under the First Amendment and our Constitution, Article 1, Section 3.
State ex rel. Liversey v. Judge Civil District Court, 34 La.Ann. 741 (1882), was a suit where plaintiff, under an allegation of previously published false, malicious, and libelous material, sought an injunction prohibiting the defendants from publishing in any future issue of the newspaper, which he alleged had libeled him, any defamatory material. The Court held that, because of the constitutional right to free speech, libel and slander were "* * * subjects of punitory, and not of merely preventive, remedies. The Constitution rules over all". The injunction was held to be an absolute nullity. The Court discussed the historical evolution of liberty of the press, and stated that to allow an injunction aimed at prohibiting further publication of defamatory material would permit the establishment of a complete censorship over the press so enjoined. Since our Court stated so clearly in that case that it cannot enjoin any future publication of defamatory remarks, certainly it must hold it cannot enjoin future publication of any and all expression. Defamatory and obscene speech are both limited exceptions to the First Amendment privileges.
We move to a consideration of the other provisions of these statutes. R.S. 13:4712, providing for the mandatory restraining order, the delayed evidentiary hearing, and the final permanent injunction, is buttressed by R.S. 13:4714, which states in pertinent part that if the existence of a *491 nuisance is established under this set of statutes, "an order of abatement shall be entered as a part of the judgment in the case, which order shall direct the effectual closing of the building, structure, land or other place against its use for any purpose for the period of one year * * *".
R.S. 13:4713 provides for contempt proceedings which may be brought ad infinitum, carrying fines up to $250.00 and imprisonment up to six months. The fines levied for contempt become liens upon the place which has been closed for all purposes.[1] Therefore, the combination of R.S. 13:4712, 4713 and 4714 places "prior restraint" as defined in its most limited sense and in its historical settingi.e., restraint of expression before it is communicated the first timeupon any future publication, exhibition, or expression, whether obscene or not.
Gambling devices and the accoutrements of houses of prostitution, which may be and are controlled under the exercise of the police power, can be legally destroyed so as not to offend again. This, however, affords no basis for analogy with the suppression and regulation of speech and other means of expression.[2] In any regulation touching upon the areas of speech and other expression, there is a perfectly valid distinction between prior restraint and accountability after abuse. Louisiana Constitution, Article I, Section 3 reads: "No law shall ever be passed to curtail or restrain the liberty of speech or of the press; any person may speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty." This is a clear and concise statement of our constitutional view that there can be no prior restraint of speech or other expression. One may speak, but when he exercises this privilege, he is accountable if there is an actual abuse of the privilege under one of the few exceptions to total freedom of expression.
R.S. 13:4714 does not permit mere book-burning or film destruction where there is an abuse of the First Amendment privilege. This provision has the effect of sledgehammering the printing press, the camera, the projectors, all the tools of expression in every medium, so that there can be no future expression at all for one who trangresses by crossing the line from free speech to obscenity upon one occasion. We can envision no more fatal defect of prior restraint under its original definition in a statute which attempts to control obscenity than that which is found in R.S. 13:4717. That provision mandates the court to effectively close the avenue of any expression whether or not it abuses the privilege and before it is so determined.
In Kingsley Books v. Brown, supra, a New York statute was upheld by the United States Supreme Court because "* * * as authoritatively construed, it studiously withholds restraint upon matters not already published and not yet found to be offensive". To the contrary, under our statute there can be no expression of any kind good or bademanating either from the *492 premises or from the devices on the premises for a period of one year. This is the very essence of the prior restraint condemned by Blackstone, by our Bill of Rights, and by our jurisprudence. Of all the constitutional violations on the face of these statutes, the prior restraint imposed under R.S. 13:4717 is the most offensive.
This particular section of the Revised Statutes does restrict expression not yet found to be an offense and not yet uttered. It is a classic example of prior restraint of speech and expression and is violative of federal and state constitutions.
Moreover, these statutes effect deprivation of property without due process in violation of our Constitution, Article 1, Section 2 and the Fourteenth Amendment to the United States Constitution. R.S. 13:4712 and 4714 in combination may close the premises where obscenity has been exhibited and deprive the owner of its use even if the use of his premises for exhibition of obscenity was not known and could not have been known by him. R.S. 13:4715 does not give him adequate relief from this deprivation of property. It merely provides that upon posting bond with surety "in the full value of the property" and upon certain guarantees he may release the property. The exchange of the full value for the thing is as much a deprivation of property without due process as if the premises were retained. Again, if another obscenity is exhibited, even entirely without the owner's knowledge, he must forfeit part of his bond each day of the exhibition. So, R.S. 13:4714, which is an exercise of unconstitutional prior restraint, also falls as a deprivation of property without due process of law.
It may be argued that since the statutory provision that the premises may be closed for use for any purpose for one year was not applied to the plaintiffs in the judgment of injunction, they cannot complain of the constitutionality of such a provision. The plaintiffs have standing to complain of R.S. 13:4717 for several reasons. First, Section 4717 provides that a judgment declaring an expression obscene and the premises a nuisance "may be based on the general reputation" of the premises or of the defendants or of the occupants or of habitual visitors thereto. Therefore, under the express provisions of Section 4717, it cannot be said that these defendants are not aggrieved by any judgment which declares that the premises they occupy and the activities they engage in on those premises constitute a nuisance. According to R.S. 13:4717, the defendants may be adjudged guilty of operating a nuisance upon submission of the judgment in this case as proof of reputation. Certainly the judgment can, under Section 4717, constitute some evidence in the future. Therefore, the judgment has a chilling effect upon the defendants' right to make any expression, whether constitutionally protected or not, for fear of contempt penalties and further declaration of the premises as a nuisance.
Plaintiffs are entitled to attack the constitutionality of R.S. 13:4717. That provision is in absolute contravention of the principle of prior restraint upon expression and is also a deprivation of property without due process of law. It reads: "On the hearing in any action filed under the provisions of R.S. 13:4711 through 13:4717 evidence of the general reputation of the building, structure, land or other place or of the defendant or of the occupants thereof or habitual visitors thereto shall be admissible, and judgment may be based on the general reputation so proven." Presumptions are provided for at law, and presumptions lie with one party or the other in certain civil proceedings. Burdens of proof shift according to the nature of the proceedings and the nature of the proof required in the proceeding. However, we can find no expression of law permitting a judgment to be based solely on the general reputation of the parties to the suit or of the things involved. Certainly no judgment affecting the right of free speech *493 could be based on general reputation. Proof that a person is repeatedly obscene in expression, that a press repeatedly has printed obscenities, or that a building has repeatedly housed obscenity is not proof susceptible of sustaining a judgment that another expression from one of these is itself an obscenity. One may be punished for uttering obscenities, one may be held in contempt for refusing to refrain from circulating that which is obscene, but one cannot be adjudged guilty of a new obscenity on reputation alone. R.S. 13:4717, which is part of the whole general statutory scheme for the action against these defendants, is unconstitutional.
We are of the opinion that R.S. 13:4711-13:4717 are unconstitutional insofar as they attempt to regulate obscenity.
The plaintiffs, defendants in reconvention, also attack these statutes and the injunction issued against them on the ground that R.S. 14:106A(2) is unconstitutional. The argument is that obscenity referred to in the nuisance statutes is, by those statutes, defined by the "Criminal Laws of this State", (R.S. 14:106) and, therefore, if R.S. 14:106A(2) is unconstitutional, the nuisance statutes are unconstitutional and the injunction issued against them is illegal, void and of no effect. We have considered the constitutionality of R. S. 14:106A(2) and (3) in State v. Shreveport News Agency, Inc., 287 So.2d 464 (La.1973), and State v. McNutt, 287 So.2d 478 (La.1973).
For the reasons assigned in State v. Shreveport News Agency, Inc., and State v. McNutt, plaintiffs' allegation of unconstitutionality here is supported and, pursuant to the clear pronouncement by the United States Supreme Court, we have declared R.S. 14:106(2) and (3) to be unconstitutional. For that reason and other reasons herein presented, we hereby declare R.S. 13:4711-4717 unconstitutional, insofar as they attempt to declare obscenity a public nuisance. The permanent injunction against the plaintiffs, defendants in reconvention, entered by the trial court, is dissolved, vacated and set aside.
It is further ordered, adjudged and decreed that the defendants, John A. Richardson, District Attorney, and George W. D'Artois, the Commissioner of Public Safety for the City of Shreveport, their agents, employees and representatives, are permanently enjoined and prohibited from interfering with the showing of "Last Tango in Paris". Defendants are to pay all costs of the proceedings.
SANDERS, C.J., dissents with written reasons.
SUMMERS, J., dissents and assigns reasons.
MARCUS, J., dissents with written reasons.
CALOGERO, J., subscribes to the foregoing opinion and assigns additionally his concurring reasons in State v. Shreveport News Agency, Inc., La., 287 So.2d 464, handed down this day.
TATE, Justice (concurring).
The issue is legal, not rhetorical.
It is true that in State v. Gulf States Theatres, 264 La. 44, 270 So.2d 547 (1972), a majority of this court held our nuisance-abatement statute, La.R.S. 13:4712, not unconstitutional when applied to a suppression of First Amendment rights.[1] However, the United States Supreme Court granted certiorari and vacated our decision and ordered us to reconsider it in the light of several of its decisions.[2] 413 *494 U.S. 913, 93 S.Ct. 3063, 37 L.Ed. 1037 (1973).
Therefore, what we did on our first opinion does not quite possess the persuasiveness my dissenting brethren find in it. It is thus not only the present majority which reverses its previous ruling; such previous ruling was annulled by the United States Supreme Court itself.
One of the decisions to which that tribunal referred this court for our reconsideration was Paris Adult Theatre v. Slayton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). There, our high court upheld a Georgia statute permitting injunctive relief against the showing of obscene movies. However, in so doing, the Supreme Court specifically noted, 413 U.S. 55, 93 S.Ct. 2634:
"Here, Georgia imposed no restraining on the exhibition of the films involved in this case until after a full adversary proceeding and a final judicial determination by the Georgia Supreme Court that the materials were constitutionally unprotected. Thus the standards of [four United States Supreme Court cases cited] were met." (Italics mine.)
To the contrary, the statute we here hold unconstitutional permits the ex parte closing of a movie theater. It also permits its being kept closed during the many months of appellate review during which the application or not of the First Amendment is being decided. It further permits the closing of the theatre for a year, the destruction of the printing press so to speak, if the exhibitor guesses wrong as to the application of the First Amendment. It thus violates almost every one of the standards imposed by our constitution (as interpreted both years ago and today by our Supreme Court) before prior restraint will be allowed of expression arguably protected by the First Amendment.
This is not a time for speech-making and appeal to the emotions and to the abhorrence of all of us for hard-core pornography. It is a time for calm, considered attempt by legal reasoning to apply a clear ruling of the United States Supreme Court, which annulled a previous decision of this court, to the statute in question. For some of us to ignore the Supreme Court's annulment and its clear pronouncements, in a bland adherence to the former decision of this court now annulled by the high court, does not seem to me to comport with accepted principles of legal reasoning, judicial function, and adherence to law and order by following not only rulings with which one agrees but also rulings with which one disagrees.
SANDERS, Chief Justice (dissenting).
Last year, in State v. Gulf States Theatres of Louisiana, Inc., 264 La. 44, 270 So. 2d 547 (1972), this Court interpreted LSA-R.S. 13:4712, the abatement of nuisance statute, and upheld its constitutionality. The case was thoroughly considered on two occasions, the opinions being authored by Chief Justice McCaleb and Mr. Justice Summers.
Answering the constitutional arguments presented, this Court stated:
"The principal thrust of the attack upon the constitutionality of the act is aimed at the quoted provision declaring that `the judge . . . shall grant a temporary injunction.' It is contended that there is no requirement that probable cause be shown through factual allegations in the affidavit accompanying the petition; that is, the mandate that the judge `shall' grant the temporary injunction deprives the judge of any discretion in the matter; the implication being that the judge must issue the temporary injunction whether the nuisance exists or not. For this reason, it is asserted, the First Amendment right of freedom of expression enjoyed by makers and exhibitors of motion pictures is restrained without reasonable cause.
"This argument lacks merit. The statute requires that the petition allege the *495 existence of a `nuisance' and that it be verified by the district attorney. This makes it necessary for the trial judge to determine, on the basis of the facts alleged, whether `obscenity', as defined by Article 106 of the Criminal Code, is `carried on' before he issues an injunction. If the allegations and the accompanying affidavit do not, in the judge's opinion, recite facts which warrant a conclusion that a `nuisance' is being `carried on' then the prerequisites to the issuance of the injunction have not been satisfied and the judge must not sign the temporary injunction. On the other hand, if the allegations of the petition and the accompanying affidavit do set forth, in the judge's opinion, that a `nuisance' is being carried on, then, and in that event, he `shall' issue the temporary injunction.
"Under this view a great deal of discretion is left to the trial judge for a judgment on his part must be made. He must ascertain from the petition and accompanying affidavit whether the facts set out fulfill those elements of the law which, taken together, constitute a nuisance. For instance, in this case, the petition must allege that the film must have been, and is being, exhibited with intent to primarily appeal to the prurient interest of the average person. And it must be lewd, lascivious, filthy or sexually indecent.
"The word `shall' as used in this statute is nothing more than the mandate the law imposes upon the judge to issue an order, as in other cases, when the rights of the parties are supported by the law and properly alleged facts; e.g., `An injunction shall issue . . . .' La.Code Civil P. art. 3601; `A temporary restraining order shall be granted without notice when it clearly appears from specific facts shown by a verified petition or by supporting affidavit
"Any restriction imposed in advance of a final judicial determination on the merits of obscenity must be limited by the shortest fixed period compatible with sound judicial resolution and the proceedings must be assured of a prompt final judicial decision. A period of fourteen days would not be too long within which to commence such proceedings. United States v. Thirty-seven Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971)."
Today, reinterpreting the same statute in a manner adverse to its constitutionality, the majority holds it unconstitutional. I disagree.
The central error, in my opinion, is that the reinterpretation itself shoves the statute off the constitutional cliff. The decision violates the cardinal principle, that, when it can reasonably do so, the Court should interpret a statute in a manner that will preserve its constitutionality. When a statute is susceptible of two interpretations, one rendering it unconstitutional and the other constitutional, the Court is under a duty to adopt the one sustaining constitutionality. Pearce ex rel. Structural Pest Con. Com'n v. Sharbino, 254 La. 143, 223 So.2d 126 (1969); State v. Smith, 252 La. 636, 212 So.2d 410 (1968); State v. Gatlin, 241 La. 321, 129 So.2d 4 (1961); 16 Am. Jur.2nd, Constitutional Law, § 144, p. 345.
In Pearce ex rel. Structural Pest Con. Com'n v. Sharbino, supra, this Court stated:
"To determine whether the present statute is unconstitutional, we must examine its provisions in the light of well established constitutional principles. Among them are salutary rules of judicial restraint. When a court can reasonably do so, it will construe a statute so as to preserve its constitutionality. Buras v. Orleans Parish Democratic Executive Committee, 248 La. 203, 177 So.2d 576; Bauman v. Ross, 167 U.S. 548, 17 S.Ct. 966, 42 L.Ed. 270; United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989; 16 Am.Jur.2d, Constitutional Law, § 144, p. 345. Moreover, when a *496 statute is susceptible of two interpretations, one making it unconstitutional and the other constitutional, the interpretation sustaining constitutionality should be adopted. Borden v. Louisiana State Board of Education, 168 La. 1005, 123 So. 655, 67 A.L.R. 1183."
The original interpretation of the statute by this Court, in my opinion, was sound. I would adhere to it and uphold the statute.
I also dissent from the holding that LSA-R.S. 14:106, the criminal obscenity statute, is unconstitutional for the reasons assigned by me in State of Louisiana v. Shreveport News Agency, Inc., 287 So.2d 478, handed down today.
For the reasons assigned, I respectfully dissent.
SUMMERS, Justice (dissenting).
I adhere to the reasons assigned for our decision on this identical issue in State of Louisiana v. Gulf States Theatres of Louisiana, Inc., 270 So.2d 547 (La.1972), where the constitutionality of La.R.S. 13:4711-17 was upheld. My reasons for dissent in State v. Shreveport News Agency, Inc., 287 So.2d 478, rendered December 3, 1973, are applicable to the declaration that Article 106 of the Criminal Code is unconstitutional.
MARCUS, Justice (dissenting).
I dissent. I do not agree with the majority that R.S. 13:4711-13:4717 are unconstitutional insofar as they attempt to regulate obscenity. My reason for this conclusion is ably set forth in the majority opinion in State of Louisiana v. Gulf States Theatres of Louisiana, Inc., 270 So. 2d 547 (La.1972), wherein the constitutionality of these statutes was upheld. I further find that R.S. 14:106, subd. A(2) is constitutional for the reasons assigned in my dissenting opinion in State of Louisiana v. Shreveport News Agency, Inc., 287 So.2d 478 on the docket of this Court handed down this date.
NOTES
[1] Under this statute not only is the offensive, obscene material enjoined from exhibition, but none of the movable property or personal effects including equipment used to manufacture, exhibit, or distribute expression may be removed from the premises. And when the premises are closed, these effects along with the immovable closed become subject to the lien for contempt fines and subject to eventual seizure and sale to satisfy contempt judgments. This accomplishes a denial of the application of the doctrine of prohibiting previous restraint upon publication.
[2] This particular constitutional defect, as well as others in the statutes we consider, probably results from the fact that the two situations were analogized. R.S. 13:4711-4717 originally abated the particular public nuisance of houses of prostitution. The amendment of R.S. 13:4711 in 1960 to include obscenity, an exception to the First Amendment right, simply treated obscenity as a nuisance. Defendantsplaintiffs in reconventionuse a 1918 procedure providing only the minimal safeguards for abatement of houses of prostitution to close a First Amendment protected tool of communication, a motion picture theatre.
[1] Not only the three dissenting judges of this court, but also all five judges of the state Second Circuit found the statute to be unconstitutional when so applied. 255 So.2d 857 (1971).
[2] This we did in an opinion on the remand in the case, 287 So.2d 496, rendered on the same date as the present majority opinion; only two justices dissented from following the clear implication of the high court's remand.