THE STATE, EX REL. EWING, APPELLEE, *v.* A MOTION PICTURE
FILM ENTITLED "WITHOUT A STITCH" ET AL., APPELLANTS.

[Cite as State, ex rel. Ewing, v. Without A Stitch
(1974), 37 Ohio St. 2d 95.]

(No. 71-649—Decided February 27, 1974.)

*Mr. Warren D. Wolfe* and *Mr. James J. Clancy,* for appellee.

*Messrs. Fuhrman, Gertner, Britz & Barkan, Mr. Harland M. Britz* and *Mr. Edmund C. Grainger, Jr.,* for appellants.

O'NEILL, C. J. The granting of the motion to certify allowing this appeal removed the issue of obscenity from

this case. There remain the following four issues: (1) The applicability of R. C. 3767.01 *et seq.* to a theater in cases involving the exhibition of a single obscene motion picture film; (2) the constitutionality of R. C. 3767.01 *et seq.* prescribing a method for controlling obscenity; (3) the mandatory or discretionary nature of the remedies set forth in R. C. 3767.01 *et seq.;* and (4) the availability of the nonstatutory remedy of forfeiture of box office receipts derived from the exhibition of a film after it was judicially determined to be obscene. Those issues will be analyzed in the same order as listed above.

*I.*

Appellants contend that, under R. C. 3767.01 *et seq.*, a theater may not be branded a nuisance unless there is evidence that it has exhibited more than one obscene film; that the entire thrust of the trial court proceeding was directed at appellee's allegation that the film "Without A Stitch" was obscene. Appellants' contention is based upon the following statutory definition of nuisance contained in R. C. 3767.01(C):

" 'Nuisance' means * * * any place, in or upon which lewd, indecent, lascivious, or obscene films or plate negatives, film or plate positives * * * are photographed, manufactured, developed, screened, exhibited, or otherwise prepared or shown, and the personal property and contents used in conducting and maintaining any such place for any such purpose. * * * "

Appellants emphasize the use of the plural in that statute to describe when the exhibition of filmed obscenity renders the theater a nuisance, and contend that this is an express legislative declaration that a theater is not a nuisance if the proceedings disclose the exhibition of only one obscene film. However, Webster's Third New International Dictionary defines "motion picture" as " a series of pictures (as photographs taken with a special camera) presented to the eye in very rapid succession * * *." R. C. 3767.01(C) explicitly states that a place which exhibits "obscene * * * film or plate positives * * *" is a nuisance, and therefore the statute is broad enough to include the

98

exhibition of a single obscene film, which is composed of a number of film positives.

This court has already recognized that R. C. 3767.01 *et seq.* can be utilized against the exhibition of a single motion picture. *State, ex rel. Keating,* v. *Vixen* (1971), 27 Ohio St. 2d 278, 272 N. E. 2d 137 (*judgment vacated and cause remanded,* 413 U. S. 905, 37 L. Ed. 2d 1016, *former judgment adhered to* [1973], 35 Ohio St. 2d 215, 301 N. E. 2d 880), involved the exhibition of the film "Vixen." In a *per curiam* opinion this court (27 Ohio St. 2d, at page 285) concluded that "where *scenes* in *a* motion picture film depict purported acts of sexual intercourse and are exhibited for commercial exploitation, those *scenes* * * * constitute a 'nuisance' within the meaning of R. C. 3767.01, and their exhibition may be enjoined as provided in R. C. 3767.02 *et seq.*" (Emphasis added.)

A federal district court has also upheld the use of R. C. 3767.01 *et seq.* to enjoin the exhibition of a single obscene film. *Grove Press* v. *Flask* (N. D. Ohio 1970), 326 F. Supp. 574, held that the film "I Am Curious (Yellow)" was obscene, and that R. C. 3767.01 *et seq.* could be invoked to prohibit its showing.

This court holds that R. C. 3767.01 *et seq.* are applicable in cases involving the exhibition of a single motion picture film.

*II.*

Appellants contend that R. C. 3767.01 *et seq.* are constitutionally impermissible as a means of controlling obscenity. Before the merits of this contention can be discussed, the procedures specified in R. C. 3767.01 *et seq.* and utilized in the present case must be understood.

R. C. 3767.03 permits any citizen of a county in which there allegedly exists a nuisance to bring an abatement action in the name of the state. R. C. 3767.04 provides for the filing and disposition of an application for a temporary injunction. The appellee did file such an application in this case. R. C. 3767.04 also requires that the application for a temporary injunction be heard within ten days of filing, and that all defendants be served with the complaint and notice of the time and place of hearing on the application

for a temporary injunction at least five days before the hearing. In the present case, the application for a temporary injunction was filed on August 10, 1970, and a hearing was scheduled for August 19, 1970. However, on the hearing date the court continued the hearing until August 25, 1970, and consolidated that hearing with a hearing on the merits of issuing a permanent injunction.

R. C. 3767.05 provides that a nuisance abatement action "shall have precedence over all other cases except crimes, election contests, or injunctions." In this case, a three-day hearing, commencing August 25, 1970, was held. It resulted in the issuance of a permanent injunctive order on September 16, 1970. The application for the temporary injunction was dismissed.

At this point, it should be noted that R. C. 3767.01 *et seq.* do not provide for or allow censorship of films prior to a judicial determination of obscenity. Therefore, the United States Supreme Court decisions, such as *Freedman* v. *Maryland* (1965), 380 U. S. 51, and *Teitel Film Corp.* v. *Cusack* (1968), 390 U. S. 139, which specify the constitutional requirements of such a system, are not applicable. Under R. C. 3767.01 *et seq.*, the earliest point in time when the exhibition of a film may be enjoined is upon the granting of a temporary injunction. However, a temporary injunction can only be issued after a judicial hearing at which all the parties can present evidence on the allegation of obscenity.

Appellants list seven specific reasons why R. C. 3767.01 *et seq.* are unconstitutional as a means for controlling obscenity. First, appellants allege that the definition of nuisance contained in R. C. 3767.01(C) is overbroad. In essence, the statute states that any place which exhibits filmed obscenity is a nuisance, and this court has held that only activity which violates R. C. 2905.34[1] and R. C. 2905.35[2] con-

---

[1]R. C. 2905.34 provides:

"As used in sections 2903.13 to 2903.16 inclusive, and sections 2905.34 to 2905.39, inclusive, of the Revised Code:

"(A) Any material or performance is 'obscene' if, when considered as a whole and judged with reference to ordinary adults, any of the following apply:

100

stitutes a "nuisance" within the meaning of R. C. 3767.01

"(1) Its dominant appeal is to prurient interest;

"(2) Its dominant tendency is to arouse lust by displaying or depicting nudity, sexual excitement, or sexual conduct in a way which tends to represent human beings as mere objects of sexual appetite;

"(3) Its dominant tendency is to arouse lust by displaying or depicting bestiality or extreme or bizarre violence, cruelty, or brutality;

"(4) It contains a series of displays or descriptions of nudity, sexual excitement, sexual conduct, bestiality, extreme or bizarre violence, cruelty, or brutality, or human bodily functions of elimination, the cumulative effect of which is a dominant tendency to appeal to prurient interest, when the appeal to such interest is primarily for its own sake or for commercial exploitation, rather than for a genuine scientific, educational, sociological, moral, or artistic purpose.

"(B) 'Nudity' means the showing, representation, or depiction of human male or female genitals, pubic area, or buttocks with less than a full, opaque covering, or of a female breast with less than a full, opaque covering or any portion thereof below the top of the nipple, or of covered male genitals in a discernibly turgid state.

"(C) 'Sexual excitement' means the condition of human male or female genitals when in a state of sexual stimulation or arousal.

"(D) 'Sexual conduct' means masturbation, homosexuality, lesbianism, sadism, masochism, natural or unnatural sexual intercourse, or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or, if such person is a female, a breast.

"(E) 'Material' means any book, pamphlet, ballad, printed paper, phonographic record or tape, motion picture film, print, picture, figure, image, description, or other tangible thing capable of being used to arouse interest through sight, sound, or in any other manner.

"(F) 'Performance' means any motion picture, preview, play, show, skit, dance, or other exhibition performed before an audience."

²R. C. 2905.35 provides:

"No person, with knowledge of the content and character of the obscene material or performance involved, shall make, manufacture, write, draw, print, reproduce, or publish any obscene material, knowing or having reasonable cause to know that such material will be sold, distributed, circulated, or disseminated; or sell, lend, give away, distribute, circulate, disseminate, exhibit, or advertise any obscene material; or write, direct, produce, present, advertise, or participate in an obscene performance; or possess or have in his control any obscene material with intent to violate this section; or offer or agree to do any act in violation of this section, or cause any such act to be done by another.

"Whoever violates this section shall be fined not more than five thousand dollars or imprisoned not more than one year, or both, for a first offense, and for each subsequent offense shall be fined not more than ten thousand dollars or imprisoned not less than one nor more than seven years, or both."

(C), *State, ex rel. Keating,* v. *Vixen, supra* (27 Ohio St. 2d 278). Upon remand of the *Vixen* case from the United States Supreme Court, this court also held (35 Ohio St. 2d 215) that the definition of obscene material contained in R. C. 2905.34 comports with the constitutional definition of the word "obscenity" as enunciated in *Miller* v. *California* (1973), U. S. , 93 S. Ct. 2607. Since an obscenity-nuisance abatement action under R. C. 3767.01 *et seq.* is limited to the exhibition of obscene material as defined in R. C. 2905.34, and since R. C. 2905.34 is not overbroad, it follows that the definition of nuisance contained in R. C. 3767.01(C) is not overbroad.

Appellants next argue that R. C. 3767.01 *et seq.* are constitutionally deficient because they do not require that defendants in obscenity abatement actions have knowledge of the contents of the film, a requirement which appellants contend is an essential ingredient of legitimate governmental regulation of obscenity. It was held in *Smith* v. *California* (1959), 361 U. S. 147, that a local obscenity ordinance imposing criminal penalties on a bookstore owner for mere possession in the store of a book later judicially determined to be obscene, even if the owner had no knowledge of the contents of the book, was a violation of freedom of the press. The court reasoned that any absolute criminal liability regulation would necessarily force bookstore owners to restrict the books they sell to those they have inspected, which would result in a restriction on the distribution of constitutionally protected, as well as obscene, books. The rationale in *Smith* v. *California* can not logically be limited either to purely criminal statutes or to bookstore owners; it is applicable whenever the state attempts to penalize a person, on obscenity grounds, for engaging in an activity normally protected by the First and Fourteenth Amendments to the United States Constitution.

The exhibition of films is an activity normally protected by the First and Fourteenth Amendments. *Kingsley International Picture Corp.* v. *Regents* (1959), 360 U. S. 684. R. C. 3767.01 *et seq.* penalize persons engaged in the exhibition of obscene films in that R. C. 3767.06 requires that all personal property used in conducting the nuisance

be sold and R. C. 3767.08 imposes a tax of three hundred dollars upon persons maintaining the nuisance and upon the theater and the real property on which it is located. Therefore, those penalty provisions can be imposed only if the persons upon whom they are sought to be imposed had knowledge of the content of the film declared to be obscene.

This requirement of *scienter* is not novel. In *State, ex rel. Keating*, v. *Vixen, supra* (27 Ohio St. 2d 278, 285), this court held that a film constitutes a nuisance which can be enjoined pursuant to R. C. 3767.01 *et seq.* only if scenes in the film violate R. C. 2905.34 *and* 2905.35. R. C. 2905.35 expressly requires knowledge of the contents of the film on the part of any person against whom that statute is sought to be invoked. Therefore, no individual can be penalized under R. C. 3767.01 *et seq.* for maintaining a theater in which an obscene film is exhibited unless it is shown that that person knew of the contents of the film. In the present case, none of the appellants contended upon appeal that he did not have knowledge of the contents of the film.

Appellants' third reason for asserting that R. C. 3767.-01 *et seq.* are unconstitutional is the allegation that those statutes place the burden of proving that a film is not obscene upon the exhibitor. It is settled that in areas generally protected by the First Amendment, the state must shoulder the burden of proving that the particular activity complained of is outside the scope of constitutional protection. *Freedman* v. *Maryland, supra* (380 U. S. 51); *Speiser* v. *Randall* (1958), 357 U. S. 513. However, R. C. 3767.01 *et seq.* do not place the burden of proof upon the defendants in an obscenity-nuisance abatement action. Since the statutes are silent on this point, the general rule, that the burden of proof is on the complainant, is applicable.

Appellants' fourth, fifth and seventh arguments concerning the constitutionality of R. C. 3767.01 *et seq.*, as a method for controlling obscenity, are premised upon the belief that the laws permit censorship without a prior judicial determination of obscenity. This contention has already been discussed and rejected in this opinion.

Appellants' final contention is that *Stanley* v. *Georgia*

(1969), 394 U. S. 557, forbids governmental sanctions against the private possession of obscenity, and that R. C. 3767.01 *et seq.* do not expressly distinguish between private possession and public exhibition of obscenity. That argument was rejected by the United States Supreme Court in *Paris Adult Theater I.* v. *Slaton* (1973), 413 U. S. 49, 93 S. Ct. 2628, in which the court held that a commercial theater is not equivalent to a private home. Therefore, *Stanley* v. *Georgia* is not applicable to the exhibition of obscenity by a theater open to the public.

None of appellants' seven reasons for alleging that R. C. 3767.01 *et seq.* prescribe an unconstitutional method for controlling obscenity are valid. It is interesting to note that six of those reasons were also raised and rejected by the federal district court in *Grove Press* v. *Flask, supra* (326 F. Supp. 574).

This court holds that R. C. 3767.01 *et seq.* prescribe a constitutionally permissible method of controlling the exhibition of obscene films.

### III.

Appellants contend that a trial court is not required to invoke every possible remedy provided in R. C. 3767.01 *et seq.* after finding a film to be obscene, and therefore the Court of Appeals erred in holding the remedies mandatory. However, an examination of the statutory language used in R. C. 3767.01 *et seq.* will show that the Court of Appeals was correct.

Upon a finding that a theater is exhibiting an obscene film, R. C. 3767.05, 3767.06 and 3767.08 dictate the relief to be granted. Each statute uses the word "shall" to describe the duty of the trial judge to impose the various remedies stated therein, and this court has held that the use of the word "shall" in a statute must be construed as imposing a mandatory duty unless there appears a clear and unequivocal legislative intent that it receive a meaning other than its ordinary meaning. *Dorrian* v. *Scioto Conserv. Dist.* (1971), 27 Ohio St. 2d 102. Since no such legislative intent appears in R. C. 3767.01 *et seq.*, the remedies imposed are mandatory.

There are four remedies contained in R. C. 3767.01 *et seq.* which must be invoked upon a finding that a theater is a nuisance as defined in R. C. 3767.01(C).

First, R. C. 3767.05 provides that the trial court enter a judgment perpetually enjoining defendants from maintaining the nuisance. In this case, the nuisance was the showing of the particular film declared to be obscene. Since R. C. 3767.05 mandates an immediate cessation of exhibiting the film, the trial court erred in permitting appellants to continue showing "Without A Stitch" pending appeal.

Second, R. C. 3767.08 requires the imposition of a three hundred dollar tax upon the nuisance and against any person maintaining it. The nuisance in a case involving a theater is defined by R. C. 3767.01(C) to include not only the theater itself, but also the real property upon which it is located and the personal property used in conducting the nuisance. The question of what specific personal property is encompassed by the use in R. C. 3767.01 *et seq.* of the phrase, "personal property and contents" used in conducting and maintaining the nuisance, has not been raised in this case, and we need not answer it. As noted in our discussion under issue II, *Smith* v. *California, supra* (361 U. S. 147), interpreting the First and Fourteenth Amendments, requires knowledge of the contents of the film on the part of the person against whom the tax is sought to be imposed as a pre-condition to the imposition of such a tax.

The third mandatory remedy is found in R. C. 3767.06. It requires the removal and sale of all personal property used in conducting the nuisance. However, the owner of such personal property is permitted to escape the sale order by coming into court within ten days after the abatement order is filed and showing that he had neither actual nor constructive knowledge that his property was being used to maintain a nuisance.

The fourth remedy is also contained in R. C. 3767.06. One part of the statute dictates that the abatement order include an order closing the place, in and upon which the nuisance was maintained, for a period of one year. R. C.

3767.06 states that the closing pertains to the use of the property "for any purpose." However, this harsh penalty is ameliorated by permitting the owner to obtain a release from the order by complying with the release provisions of R. C. 3767.04. Those provisions require that the closing order must be released if the owner appears in court, pays the costs incurred in the action, files a bond in the full value of the property, and demonstrates to the court that he will prevent the nuisance from being reestablished. The nuisance is the exhibition of the particular film declared obscene. The release provisions do not, as appellants contend, require the owner to show that no film to be exhibited during the one-year period will be obscene. Such a requirement would not only be impossible, as a practical matter, but also would be an unconstitutional prior restraint on an activity generally protected by the First Amendment. *Freedman* v. *Maryland, supra* (380 U. S. 51); *Speiser* v. *Randall, supra* (357 U. S. 513). The language of R. C. 3767.06 does not require a construction which would render the one-year closing provision unconstitutional, and this court will not so construe it.

## IV.

The final issue in this case is the availability of the remedy of forfeiture of box offices receipts derived from the exhibition of a film after it has been declared to be obscene. As used in this opinion, the word "forfeiture" means the divestment of property without compensation in consequence of some act prohibited by law; such forfeitures are imposed "by the law-making power to insure a prescribed course of conduct." *Justice* v. *Lowe* (1875), 26 Ohio St. 372, 375. In his complaint appellee demanded that appellants forfeit all receipts derived from the exhibition of "Without A Stitch." The trial court reserved a decision on that issue pending the outcome of appellate review of its finding of obscenity. R. C. 3767.01 *et seq.* do not provide for such a forfeiture; therefore that portion of appellee's complaint demanding forfeiture should have been dismissed by the trial court.

However, the Court of Appeals did not order a for-

feiture; it merely required that appellants account for and pay to the county treasurer the receipts obtained from showing "Without A Stitch" after the date on which the trial court's permanent injunction would have become effective had the judge not stayed it. This accounting was not imposed as a result of any illegal act on the part of appellants; it was, instead, a recognition by the Court of Appeals that the trial court erred when it stayed the effectiveness of its injunction order. As noted in our discussion under issue No. III, a trial court is required by R. C. 3767.05 to issue a permanent injunction when it declares a film to be obscene; it does not have the power to stay the effectiveness of the injunction. The only way the Court of Appeals could rectify that error was to assure that appellants did not profit thereby—which was the object of the accounting order.

The Court of Appeals did not specify whether appellants must account for gross receipts or net receipts. However, appellants should not be deprived of gross receipts, as this would unjustly penalize it for an error committed by the trial court. Had the trial court not stayed the injunction, appellant could have used the theater to show a nonobscene film. Therefore, fairness requires that this court construe the accounting order issued by the Court of Appeals to be limited to net receipts derived from exhibiting the film "Without A Stitch" after September 16, 1970, which was the filing date of the trial court's order declaring the movie obscene.

The judgment of the Court of Appeals is modified to reflect our holding that the trial court should have dismissed appellee's demand for forfeiture of all box office receipts derived from the exhibition of the film "Without A Stitch."

*Judgment modified and affirmed as modified.*

HERBERT, CORRIGAN, STERN, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.