THE CITY OF DELAVAN, Plaintiff-Appellee, *v.* CHARLES THOMAS, Defendant-Appellant.

(No. 74-363; )

Third District—August 30, 1975.

Patrick A. Tuite, of Chicago, for appellant.

John Ritchie, of Pekin, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Defendant Thomas was convicted of operating a motion picture theatre without a license in violation of a municipal ordinance after his license had been revoked for permitting an obscene motion picture to be shown. On appeal from his conviction, defendant contends that the licensing ordinance was unconstitutional.

Delavan ordinance No. 73-6, section 4, provides:

> "It shall be unlawful to permit any person to offer or present any motion picture or performance which is obscene.
>
> For the purpose of this Ordinance a motion picture or performance is obscene if, whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interests, that is, a shameful or morbid interest in nudity, sex or excretion, and it

goes substantially beyond limits of candor in description or representation of such matters."

Section 12 of the ordinance authorizes revocation of licenses as follows: "The Mayor shall have the power to revoke any license issued under the provisions of this Ordinance for good and sufficient cause. If at any time after the granting of any license, any licensee shall have violated any of the provisions of this Ordinance or any of the statutes of the state in the conduct of his business, the Mayor may revoke the license therefor."

Section 13 provides for notice of revocation to be given the licensee, and, if the licensee submits a request for hearing within 5 days, the revocation shall be suspended until the city council grants a special hearing, after which the council may affirm or overrule the revocation.

In addition, section 11 provides for a fine of not less than $100, nor more than $500 upon conviction for violation of any provision of the ordinance.

After the mayor and members of the city council viewed the movie in question, defendant's license was revoked by the mayor for showing obscene motion pictures, and, following a hearing, the revocation was affirmed by the city council. Ten days later defendant was charged with operating a movie theatre on three occasions without a valid license in violation of Ordinance 73-6, was found guilty by the court, and fined $100 on each of the three charges.

Defendant's first contention is that the definition of obscenity contained in the ordinance fails to meet constitutional standards as defined by the courts. In *Miller v. California*, 413 U.S. 15, 37 L.Ed.2d 419, 93 S.Ct. 2607 (1973), the Supreme Court of the United States set out the following definition of obscene material:
"(a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest * * *, (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." 413 U.S. 15, 24, 37 L.Ed.2d 419, 431, 93 S.Ct. 2607, 2614.

Thereafter the Supreme Court of Illinois upheld the constitutionality of both the State obscenity statute (Ill. Rev. Stat. ch. 38, § 11—20) and a City of Moline ordinance under the standards required in the *Miller* decision. In *People v. Ridens*, 59 Ill.2d 362, 321 N.E.2d 264 (1974), the court held that both the city ordinance and the State statute included parts (a) and (b) of the *Miller* test. The court then ruled that the Illinois and Moline requirement that the work be "utterly without redeeming social

value" was more restrictive than part (c) of the *Miller* test, and must be used by Illinois courts rather than the *Miller* standard. *People v. Gould*, 60 Ill.2d 159, 324 N.E.2d 412 (1975).

■■ The Delavan ordinance, section 4, defines obscenity in approximately the same language as the statute and ordinance construed in *Ridens*, except that the ordinance here does not provide that the motion pictures must be "utterly without redeeming social importance." (Ill. Rev. Stat., ch. 38, § 11—20(c).) Neither does the ordinance contain a provision that the film, "taken as a whole, lacks serious literary, artistic, political or scientific value," as required by *Miller*. In fact, there is nothing in the ordinance to protect films having social or cultural value from classification as obscene. As *Miller* and *Ridens* clearly hold, regulation of forms of expression that are within the First Amendment free speech protection cannot be unnecessarily broad, and must give adequate notice of what is prohibited. Furthermore, it has been said, "The vice of vagueness is particularly pronounced where expression is sought to be subjected to licensing." *Interstate Circuit, Inc. v. City of Dallas*, 390 U.S. 676, 683, 20 L.Ed. 2d 225, 232, 88 S.Ct. 1298 (1968).

Prior to the *Miller* and *Ridens* decisions, the Illinois Supreme Court had upheld municipal ordinances defining obscenity in terms that omitted the "without redeeming social value" requirement. (*City of Blue Island v. DeVilbiss*, 41 Ill.2d 135, 242 N.E.2d 761 (1968); *City of Chicago v. Kimmel*, 31 Ill.2d 202, 201 N.E.2d 386 (1964).) These decisions were based upon *Roth v. United States*, 354 U.S. 476, 1 L.Ed.2d 1498, 77 S.Ct. 1304 (1957), which was expressly superseded by *Miller v. California*. *Miller* very specifically sets forth the limits of governmental regulation of obscene materials in the following words:

> "[W]e now confine the permissible scope of such regulation to works which depict or describe sexual conduct. That conduct must be specifically defined by the applicable state law, as written or authoritatively construed. A state offense *must also be limited* to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." (Emphasis added). (413 U.S. 15, 24, 37 L.Ed.2d 419, 430-31, 93 S.Ct. 2607, 2614.)

This directive, taken with *Ridens*, requires invalidation of an ordinance which defines obscenity more broadly than *Miller*.

Accordingly, we hold section 4 of the Delavan ordinance to be unconstitutional in that the definition of obscenity contained therein is not confined to the permissible scope of such regulations, as set forth in *Miller* and *Ridens*.

■■ Defendant also contends that the Delavan ordinance revocation

procedure imposes an unconstitutional prior restraint on future exhibitions of nonobscene motion pictures. A ruling on that issue is not strictly required; however, we choose to consider it here because no Illinois court has previously determined the validity of theatre license revocation as a regulation of obscene movies. Although motion picture theatres are subject to licensing and regulation under the police powers of a municipality (*City of Metropolis v. Gibbons*, 334 Ill. 431, 166 N.E. 115 (1929)), motion pictures are a form of expression within the protection of the First and Fourteenth Amendments to the Constitution of the United States (*Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 96 L.Ed. 1098, 72 S.Ct. 777 (1952); *American Civil Liberties Union v. City of Chicago*, 3 Ill.2d 334, 121 N.E. 2d 585 (1954)), and consequently the test of the validity of an ordinance regulating movie theatres is whether or not it presents "a danger of unduly suppressing protected expression." (*Freedman v. Maryland*, 380 U.S. 51, 54, 13 L.Ed.2d 649, 652, 85 S.Ct. 734, 737 (1965).) Exhibition of obscene movies is not protected by the First Amendment. (*Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 37 L.Ed.2d 446, 93 S.Ct. 2628 (1973).) Criminal prosecutions for exhibiting obscene movies have been upheld (*Movies, Inc. v. Conlisk*, 345 F. Supp. 780 (N.D. Ill. 1972), and a censorship system whereby films are reviewed and licensed on an individual basis are also permissible if procedural safeguards required by the Federal Constitution are met. *Universal Film Exchanges, Inc. v. Chicago*, 288 F. Supp. 286 (N.D. Ill. 1968); *Star v. Preller*, 375 F.Supp. 1093 (D. Md. 1974), *aff'd*, 95 S.Ct. 217 (1974); Annot., 5 A.L.R.3d 1214, § 7 (1966); *cf. Freedman v. Maryland; Tietel Film Corp. v. Cusack*, 390 U.S. 139, 19 L.Ed.2d 966, 88 S.Ct. 754 (1968).

The licensing regulation in the case before us is an obvious attempt to prevent defendant from showing all future films, whether obscene or not, by means of a license revocation predicated on an administrative determination that one obscene film was shown. The procedure devised by the City of Delavan contains none of the procedural safeguards which exist when a criminal sanction is applied after a determination of obscenity has been made in a criminal trial. (*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 9 L.Ed.2d 584, 83 S.Ct. 631, 639 (1963).) Here the criminal sanctions were imposed after defendant's license had been revoked and did not involve a judicial determination of whether the movie which resulted in the revocation was in fact obscene or not. This scheme is also fatally defective as an attempt at censorship since the Supreme Court of the United States has explicitly ruled that censorship procedures require (1) the burden of instituting judicial proceedings, and of proving that the material is unprotected, must rest on the censor; (2) any restraint

before judicial review can be imposed only for a specified brief period and only to preserve the status quo; and (3) a prompt judicial determination must be assured. *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 43 L.Ed.2d 448, 95 S.Ct. 1239 (1975); *Freedman v. Maryland.*

Plaintiff relies upon *Ciampa v. Chicago,* 12 Ill.App.3d 368, 299 N.E.2d 53 (1st Dist. 1973), where the court upheld a revocation of a food purveyor's license upon the charge that she had dispensed obscene literature contrary to municipal ordinance. In its opinion, the reviewing court held that it was not necessary to have a prior judicial determination before revoking a food purveyor's license for a violation involving the sale of obscene literature. Unlike the case at bar, *Ciampa* did not revoke the licensee of a business whose purpose is to disseminate or exhibit materials protected by the First Amendment, and in addition the revocation did not prevent *Ciampa* from continuing to sell books and magazines, but only from selling food.

■■ The Supreme Court of Minnesota recently ruled a similar ordinance invalid. In *Alexander v. St. Paul,* —— Minn. ——, 227 N.W.2d 370 (1975), the ordinance authorized denial of a motion picture theatre license on grounds that the licensee, or any employee, had been convicted of an obscenity offense, and the court held that plaintiff was thereby prohibited from exercising a constitutionally-protected right because of a past abuse of that right, contrary to the principles of *Near v. Minnesota ex rel. Olson,* 283 U.S. 697, 75 L.Ed. 1357, 51 S.Ct. 625 (1931). Other courts have invalidated similar licensing statutes. (See, *e.g., Avon 42nd Street Corp. v. Myerson,* 352 F.Supp. 994 (S.D.N.Y. 1972); *City of Seattle v. Bittner,* 81 Wash.2d 747, 505 P.2d 126 (1973); *Perrine v. Municipal Court,* 5 Cal.3d 656, 488 P.2d 648, 97 Cal. Rptr. 320 (1971), *cert. denied,* 404 U.S. 1038, 30 L.Ed.2d 729, 92 S.Ct. 710; accord, *City of Chicago v. Town Underground Theatre, Inc.,* 9 Ill.App.3d 930, 293 N.E.2d 367 (1st Dist. 1973). Contra, *State ex rel. Cahalan v. Diversified Theatrical Corp.,* 59 Mich. App. 223, 229 N.W.2d 389 (1975).) In our judgment, the reasoning of *Alexander v. St. Paul* is persuasive and, when applied to the case at bar, requires us to hold, as we do, that the Delavan ordinance imposed an unconstitutional prior restraint on defendant's right to exhibit movies protected by the First Amendment, and failed to provide the procedural safeguards required by the Fourteenth Amendment.

Because of our holding in this case, it is not necessary to consider the other issues raised by defendant.

Judgment reversed.

STOUDER, P. J. and BARRY, J., concur.