**OGDEN CITY, a Municipal Corporation of the State of Utah, and Weber County, a Body Corporate and Politic of the State of Utah, Plaintiffs and Appellants,**

v.

**EAGLE BOOKS, INC., d/b/a Adult Book Store, a/k/a Ogden Books, James Forrester, Casper Dominguez, Hersel Richardson, Willie Williams, Randy Uribe, Kenneth Peirren, Arthur Adalid, Luanna Hall Haig, John Does (1) through (5), Jane Does (1) through (5), and Wayne Giles, Defendants and Respondents.**

No. 15596.

Supreme Court of Utah.

Oct. 16, 1978.

Robert B. Hansen, Atty. Gen., Salt Lake City, Robert L. Newey, Weber County Atty., Timothy W. Blackburn, Ogden, for plaintiffs and appellants.

Arthur M. Schwartz, Denver, Colo., Stephen R. McCaughey, Richard G. MacDougall, Salt Lake City, for defendants and respondents.

HALL, Justice:

Plaintiffs (hereinafter referred to collectively as "Ogden City") appeal from a summary judgment denying injunctive relief sought to prohibit defendant, Eagle Books, Inc. (hereinafter referred to as "Eagle Books") from operating a bookstore without a license.

Eagle Books was formerly licensed by Ogden City to do business as a bookstore, however, said license was revoked following some 30 criminal convictions of distributing pornographic materials offensive to public decency.[1] Thereafter, Eagle Books continued to operate the bookstore without a license which precipitated these proceedings.

---

1. Eagle Books makes no challenge to the propriety of said license revocation. For the treatment of that issue in a similar case also decided today see *West Gallery Corporation v. Salt Lake City Board of Commissioners*, Utah, 586 P.2d 429 (1978).

Eagle Books was successful in persuading the District Court that any enjoinder of its operation (although not properly licensed to do business) would constitute an unconstitutional "prior restraint" on the right of free speech.[2] We cannot agree and reverse the lower court's ruling.

Ogden City has the authority to "license, tax and regulate the business conducted by merchants, wholesalers and retailers, shopkeepers and storekeepers . . . ."[3] Pursuant to that authority, Ogden City enacted an ordinance[4] which provides in part:

The City Council, upon notice and hearing as provided in this chapter, may revoke any license issued by the City upon the conviction of the licensee or any officer, employee or partner of the licensee of any violations of the Utah State Law as it now exists or may hereafter be amended, concerning 'Pornographic and Harmful Materials and Performances'[5] at the licensed premises.

Eagle Books chooses to ignore the authority of Ogden City to issue and revoke licenses. It also ignores the numerous license violations and the subsequent criminal convictions which resulted in the license revocation. Rather, it seizes upon the doctrine of "prior restraint" as a means of affording the right to operate without a license.

The doctrine of "prior restraint" has no application to the facts of this case. Ogden City has lawfully invoked the sanction of license revocation.[6]

Once a license has been properly revoked and a business nevertheless continues to operate, the usual remedy is a misdemeanor prosecution.[7] What Ogden City seeks here is an injunction. Such an action lies, not only against these defendants, but against anyone else operating a business in Ogden City without a license.[8]

Reversed with instructions to grant the relief sought by Ogden City.

ELLETT, C. J., and CROCKETT, J., concur.

WILKINS, Justice (dissenting):

I respectfully dissent.

The plaintiffs appeal from a decision of the District Court of Weber County denying their claim for injunctive relief. All statutory references are to Utah Code Ann., 1953, as amended.

On February 3, 1977 the Ogden City Council passed Ordinance 7–77 which authorized the revocation of any license issued by the city upon conviction of the licensee or any officer, employee or partner of the licensee with violating the provisions of Sections 76–10–1202 to 1211.

Pursuant to this ordinance Ogden City revoked the business license of the Defendant Eagle Books, Inc. (hereafter "defendant" unless otherwise stated), which claimed that the revocation was unlawful and hence it continued to operate business.

The plaintiffs initiated these proceedings seeking a permanent injunction against defendants for operating without a license[1] and for maintaining a nuisance. The plaintiffs allege that defendant and its employees have been convicted for the distribution of pornographic materials on at least thirty occasions and are presently selling and dis-

---

2. First Amendment, Constitution of the United States; Article I, Sections 1 and 15, Constitution of Utah.

3. U.C.A., 1953, 10–8–39.

4. Title 7, Chapter 28, Ogden City Ordinances.

5. Referring to U.C.A., 1953, 76–10–1202 to 1211.

6. Supra, footnote 1.

7. U.C.A, 1953, 76–8–410; See also Sec. 7–28–8, Ogden City Ordinances.

8. For direction as to when injunctive relief is available in such a case see Rule 65A(e) U.R. C.P., and *Nelson v. Smith*, 107 Utah 382, 154 P.2d 634 (1944).

1. The District Court refused to grant injunctive relief concerning the licensing matter, holding that the Ogden City Ordinance 7–77 carried its own penalty for violation, viz., a "daily" misdemeanor. Hence, the Court did not rule on the ordinance's constitutionality, noting that that challenge was being properly raised in another case.

tributing materials that offend public decency. The plaintiffs further allege that the Defendant Wayne Giles is the owner of the premises occupied by defendant and that he knowingly allowed the premises to be used for the distribution of materials that offend public decency.

Defendants admit some of them have heretofore been convicted of distributing pornography and admit they are distributing materials which might offend certain persons' sense of public decency.

No trial was held but the Court rendered a decision based on the plaintiffs' motion for a summary judgment. After a hearing on this motion the Court entered judgment in favor of the defendants.

Section 76–10–803 defines "Public Nuisance" in relevant part as follows:

"Public Nuisance" defined.—(1) A public nuisance is a crime against the order and economy of the state and consists in unlawfully doing any act or omitting to perform any duty, which act or omission

. . .

\* \* \* \* \* \*

(b) Offends public decency.

The plaintiffs sought to have the Court enjoin the defendants from maintaining the nuisance at the subject bookstore pursuant to Section 76–10–808, the pertinent part which states:

Relief granted for public nuisance.—If the existence of a public nuisance as defined by subsection 76–10–803(1)(b) is admitted or established either in a civil or criminal proceeding, a judgment shall be entered which shall:

(a) Permanently enjoin each defendant and any other person from further maintaining the nuisance at the place complained of and each defendant from maintaining such nuisance elsewhere.

The defendants' answer admits prior convictions for the distribution of pornographic materials, and the existence of a public nuisance, if one exists, must rest solely upon such convictions.

The District Court concluded that Section 76–10–808 is limited to enjoining distribution of specific items of material which have been legally determined to be pornographic and therefore not protected by the First Amendment [2] to the Constitution of the United States. The Court concluded that the statute cannot be used to enjoin the operation of a bookstore per se, and that such injunctive relief, if granted, would be a prior restraint of materials not judged to be pornographic.

In 1975, the United States Supreme Court stated:

Any system of prior restraint . . . "comes to this Court bearing a heavy presumption against its constitutional validity." The presumption against prior restraints is heavier—and the degree of protection broader—than that against limits of expressions imposed by criminal penalties. Behind the distinction is a theory deeply etched in our law: *a free society prefers to punish the few who abuse the rights of speech after they break the law than to throttle them and all others before hand.* [Emphasis of "after" in original—balance of emphasis added.][3]

The crucial point is that books, films, and other written material are not presumed to be pornographic; on the contrary, they are presumed encompassed within the protection of free speech. Material loses that protection only *after* a proper judicial proceeding in which it is determined to be obscene. *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). After adjudication the material can be destroyed and its future exhibition enjoined. *People ex rel. Busch v. Projection Room Theater*, 17 Cal.3d 42, 550 P.2d 600, 130 Cal.Rptr. 328

---

**2.** See also the clarity and strength expressed in the Constitution of Utah, Art. I, Sec. 15 where in pertinent part it states: "No law shall be passed to abridge or restrain the freedom of speech or of the press."

**3.** *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558–59, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448 (1975) (citations omitted). See also *Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931).

(1976), *cert. denied*, 429 U.S. 922, 97 S.Ct. 320, 50 L.Ed.2d 289 (1976); *State ex rel. Ewing v. Without a Stitch*, 37 Ohio St.2d 95, 307 N.E.2d 911 (1974). An injunction could be granted here, if it were requested, concerning the exhibition of materials previously adjudicated obscene. That however is not the relief that plaintiffs seek.

An injunction that would prevent the defendants from pursuing their business based on prior obscenity convictions or adjudications would clearly be an unconstitutional prior restraint on freedom of speech in violation of the First Amendment.[4] A "padlock" injunction prevents not only the exhibition of materials which might be held obscene but also the exhibition of legitimate books and magazines. Such an interference is constitutionally infirm and prohibited.

The battle against pornography must be waged—and is being waged—on legal plains other than prior restraint. Why? The reasons are not blurred and are compellingly stated, as noted ante, because the law—struggling with many competing interests—has mandated that ". . . a free society prefers to punish the few who abuse the rights of speech *after* they break the law than to throttle them and all others beforehand." [5] [Emphasis in original.]

The merchants of obscenity gain, of course, monetary profit from their trade. But, they bring no dower of worth to our heritage. Indeed, the fruitage of their trade besmears civilizing achievements and diminishes man's reach for excellence and elevation. However, I believe the law should punish those who peddle the rubbish of pornography *after* adjudication by criminal sanctions and civil action but not *before*.[6] This "law's delay" is, at times, fatiguing and aggravating to most of us but necessary in order to aid in the preservation of that highly vulnerable—but cherished—right enjoyed by only a few societies in all human history—free expression.

MAUGHAN, J., concurs in the views expressed in the dissenting opinion of WILKINS, J.

4. *Busch, supra*; *Ewing, supra*; *Kingsley Books, Inc. v. Brown*, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957); *State ex rel. Cahalan v. Diversified Theatrical Corp.*, 396 Mich. 244, 240 N.W.2d 460 (1976); *General Corp. v. State ex rel. Sweeton*, 294 Ala. 657, 320 So.2d 668 (1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1494, 47 L.Ed.2d 753 (1976); *Mitchem v. State ex rel. Schaub*, Fla., 250 So.2d 883 (1971); *Sanders v. State*, 231 Ga. 608, 203 S.E.2d 153 (1974); *State v. A Motion Picture Entitled "The Bet,"* 219 Kan. 64, 547 P.2d 760 (1976); *Gulf States Theatres of Louisiana, Inc. v. Richardson*, La., 287 So.2d 480 (1974); *State ex rel. Field v. Hess*, Okla., 540 P.2d 1165 (1975); *New Rivieria Arts Theatre v. State ex rel. Davis*, 219 Tenn. 652, 412 S.W.2d 890 (1967); *Near v. Minnesota ex rel. Olsen*, 283 U.S. 697, 51 S.Ct.

625, 75 L.Ed. 1357 (1931); *Grosjean v. American Press Co.*, 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936); *Cantwell v. State of Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); See also 46 Fordham L.Rev. 57, at 76 (Oct. 1977); 28 Hastings L.J. 1329, at 1333 (July 1977); 44 U. of Chicago L.Rev. 509, at 550 (Spring 1977); 14 Wake Forest L.Rev. 1, at 21 (Feb. 1978).

5. *Southeastern Promotions, Ltd., supra* note 3, 420 U.S. at 558–59, 95 S.Ct at 1246.

6. See, for example, where convictions were upheld by this Court in *State v. Haig*, Utah, 578 P.2d 837 (1978); *State v. Pierren*, Utah, 583 P.2d 69 (1978).