**WEST GALLERY CORPORATION, a Utah Corporation, Plaintiff and Appellant,**

v.

**SALT LAKE CITY BOARD OF COMMISSIONERS, Ted Wilson, Glen Greener, Jennings Phillips, Jr., Jess Agraz and Herman Hogensen, Individually and as Members of the Salt Lake City Board of Commissioners, Defendants and Respondents.**

No. 15749.

Supreme Court of Utah.

Oct. 16, 1978.

---

1. U.C.A., 1953, Sec. 32–1–32.6, enacted by Laws of Utah, 1969, Ch. 83, Sec. 52.

John D. O'Connell, Salt Lake City, for plaintiff and appellant.

Roger F. Cutler, Salt Lake City Atty., Paul G. Maughan, Asst. Salt Lake City Atty., Salt Lake City, for defendants and respondents.

HALL, Justice:

This appeal concerns a single issue of constitutional law: Does a Salt Lake City licensing ordinance which permits the City to suspend an adult theatre license if the licensee violates the City's obscenity ordinance during the license term infringe upon rights of free speech guaranteed by the constitutions of the United States and the State of Utah?[1] It is noteworthy that we are not called upon to discuss any issue of procedural due process or improper breadth of administrative discretion. Plaintiff-Appellant asserts that since the ordinance provides for license revocation as a consequence of obscenity ordinance violation it is an unconstitutional interference with freedom of speech.

Defendants-Respondents, Salt Lake City Board of Commissioners, (the "City") enacted an ordinance (Title 20, Chapter 20, Revised Ordinances of Salt Lake) which was in effect at all times relevant to this litigation and which provides that the City may revoke or suspend a theatre license upon the licensee's conviction of violation of the City's obscenity ordinances. The ordinance provides grounds for revocation other than "conviction of violation," but they do not concern us here.

Plaintiff-Appellant West Gallery Corporation ("Gallery") obtained an adult theatre license from the City in 1974. In 1976, Gallery was convicted of violating the City's obscenity ordinance, and the City acted pursuant to the licensing ordinance to suspend Gallery's license. Gallery applied to the Third Judicial District Court for annulment of the suspension on constitutional grounds. From denial of that application, Gallery appeals.

There are certain relevant principles of constitutional law so well established as not to require supporting citation. The United States Constitution and the Utah Constitution[2] both prohibit the making of laws "abridging freedom of speech." Motion pictures are forms of expression which constitute "speech" within the meaning of the constitutional phrases. "Obscene" speech is not protected by either the federal or the state constitution.

1. The First Amendment to the Constitution of the United States prohibits Congress from making any law "abridging the freedom of speech"; Article I, Section I of the Constitution of Utah guarantees everyone the inherent and inalienable right "to communicate freely their thoughts and opinions, being responsible for the abuse of that right," and Section 15 thereof provides "[n]o law shall be passed to abridge or restrain the freedom of speech . . . ."

2. Ibid.

Gallery's position is that license suspension in the circumstances of this case is an attempt by the City to suppress as obscene the exhibition of whatever films Gallery might intend to exhibit before any adjudication of their obscenity. Gallery cites an impressive array of cases from other States which clearly hold that a State cannot constitutionally prevent the exhibition of a motion picture before it is judicially determined to be outside the scope of First Amendment protection. Those cases[3] (adopting what is sometimes called the doctrine of "prior restraint") deny any state authority to enjoin a theatre's operation or to suspend the operator's license on the ground of past obscenity violation. We observe that all of these cases are from state systems, however, we prefer the reasoning in the federal cases which supports a contrary result.

Examination of the pronouncements of the federal judiciary, and particularly the Supreme Court, does not lead to the conclusion that prior restraint, as a means of controlling *obscenity,* is constitutionally unacceptable. The initial case on the point is *Near v. Minnesota*[4] which dealt with a State's attempt to enjoin the continued publication of a periodical which had, from its inception, been loaded with scandalous and libelous statements about public officials and others. The Court held that prohibition of critical comment, before judicial determination of its libelous nature, constituted prior restraint in violation of First Amendment guarantees.

The Court distinguished, however, material feared to be libelous and material feared to be obscene in terms of the propriety of prior restraint. The majority opinion notes that the "protection" of the First Amendment "even as to previous restraint is not absolutely unlimited." It then undertakes to identify some "exceptional cases" (such as in time of war) in which prior restraint could be justified:

No one would question but that a government might prevent actual obstruction to its recruiting service or the publication of the sailing dates of transports or the number and location of troops. *On similar grounds, the primary requirements of decency may be enforced against obscene publications.* [Emphasis added.]

In *Times Film Corp. v. Chicago,*[5] the court interpreted the quoted language of *Near,* as we do now, to permit the imposition of previous restraint in the control of obscenity under certain circumstances.

■ Gallery argues that the use of the licensing authority to punish individuals for past crimes is somehow abhorrent to constitutional principles. We do not see that the license suspension under review is primarily a punishment for past crimes. It is rather a means of assuring that the people who make the initial decision about the display of erotic films are not people who have already demonstrated an insensitivity to the statutory criteria for acceptability. A license is a privilege, not a right, and the licensing authority can and has been used to deter misconduct, even where freedom of speech is involved. A prominent example thereof is the longstanding practice of revoking various professional licenses for misconduct.

The States have traditionally used licensing authority to control protest demonstrations and parades, activity which clearly

---

**3.** *People ex rel. Busch v. Projection Room Theater,* 17 Cal.3d 42, 130 Cal.Rptr. 328, 550 P.2d 600 (1976); *General Corp. v. State ex rel. Sweeton,* 294 Ala. 657, 320 So.2d 668 (1975); *State v. A Motion Picture Entitled "The Bet",* 219 Kan. 64, 547 P.2d 760 (1976); *Gulf States Theatres of Louisiana v. Richardson,* 287 So.2d 480 (La.1974); *New Rivieria Arts Theatre v. State,* 219 Tenn. 652, 412 S.W.2d 890 (1967); *City of Seattle v. Bittner,* 81 Wash.2d 747, 505

P.2d 126 (1973); *City of Delevan v. Thomas,* 31 Ill.App.3d 630, 334 N.E.2d 190 (1975); *Alexander v. City of St. Paul,* 303 Minn. 201, 227 N.W.2d 370 (1975).

**4.** 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931).

**5.** 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961).

falls within First Amendment shelter. In *Cox v. New Hampshire,*[6] the court ruled it constitutional for the state to require a parade license so long as the discretion vested in the administrative agency related to those aspects of the activity ("time, place and manner") which the state must regulate in order to provide adequate traffic control and police protection.

■ Whether legislative action which impinges on speech freedom is constitutional seems to depend on whether the action is a legitimate exercise of the police power in the interest of the public welfare and safety. The classic due process test for judging the validity of an exercise of the police power are "First, that the interest of the public . . . require such interference and second that the means are reasonably necessary for the accomplishment of the purpose."[7]

■ On the question of whether the interests of the public require interference with the business of exhibiting motion pictures, the U.S. Supreme Court has recently declared that the threat of public exposure to obscene movies can be found to "endanger the public safety." In *Paris Adult Theatre v. Slaton,*[8] the court said:

> The States have the power to make a morally neutral judgment that public exhibition of obscene material, or commerce in such material, has a tendency to injure the community as a whole, to endanger the public safety, or to jeopardize, in Chief Justice Warren's words, the States' "right . . . to maintain a decent society."

The City can constitutionally make and has made a judgment that the exhibition of obscene motion pictures endangers the public safety; and the police power is invoked, in the classic phrase, to protect "the public health, safety and welfare."

On the question of whether the means (suspension of license for violation of obscenity ordinance) is reasonably necessary for accomplishment of the purpose, there are two federal cases which are relevant. In *Times Film Corp. v. Chicago,* supra, the court, in upholding an ordinance which required an applicant for a movie license to submit a copy of each film to the police commissioner for preview, said "it is not for the court to limit the State in its selection of the remedy it deems most effective to cope with such a problem."

In *106 Forsyth Corp. v. Bishop,*[9] a license suspension was upheld as an appropriate remedy under circumstances substantially the same as those before the court now. The Supreme Court denied certiorari. No other federal appellate decisions appear to be on point.

We do not perceive that every citizen has the unrestricted right to operate an adult theatre or, indeed, to speak his mind without restriction reasonably related to protection of coordinate public rights. We hold that the license suspension under scrutiny does not violate federal or state constitutional guarantees.

Affirmed, Costs to Defendants-Respondents.

ELLETT, C. J., and CROCKETT, J., concur.

MAUGHAN, Justice (dissenting):

The ordinance under which appellant's license was revoked no doubt infringes upon rights of free speech under the Federal and State Constitutions. The question we are faced with is whether the infringement is so significant it is constitutionally intolerable. It is established, "There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any

---

**6.** 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941).

**7.** *Lawton v. Steele,* 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385 (1894).

**8.** 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973).

**9.** 482 F.2d 280 (5th Cir. 1973).

constitutional problem. These include the lewd and obscene . . . ."[1]

However, in regulating obscenity we must remember the importance of rights involved. In the words of the United States Supreme Court:

> The fundamental freedoms of speech and press have contributed greatly to the development and well-being of our free society and are indispensable to its continued growth. Ceaseless vigilance is the watchword to prevent their erosions by Congress or by the States. The door barring Federal and State intrusion into the area cannot be left ajar; it must be kept tightly closed and opened only the slightest crack necessary to prevent encroachment upon more important interests.[2]

Because of this concern for First Amendment rights, the doctrine of prior restraint has developed, a doctrine which incidentally can be traced back to Blackstone, who stated: "The liberty of the press is indeed essential to the nature of a free state; but this consists in laying no previous restraints upon publications, and not in freedom from censure for criminal matter when published."[3] More recently, the United States Supreme Court has stated:

> Any system of prior restraint, however, "comes to this Court bearing a heavy presumption against its constitutional validity." [Citation omitted.] The presumption against prior restraints is heavier—and the degree of protection broader—than that against limits on expression imposed by criminal penalties. Behind the distinction is a theory deeply etched

in our law: a free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them and all others before hand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable.[4]

> . . . [U]nder the Fourteenth Amendment, a State is not free to adopt whatever procedures it pleases for dealing with obscenity . . . without regard to the possible consequences for constitutionally protected speech.[5]

In *Southeastern Promotions, Ltd. v. Conrad*[6] the Supreme Court stated that any system of prior restraint is invalid under the First Amendment if it lacks certain "procedural safeguards designed to obviate the dangers of a censorship system."[7] In *Freedman v. Maryland,*[8] the Supreme Court invalidated Maryland's censorship scheme because safeguards were absent. "But a model is not lacking," the court noted, citing *Kingsley Books, Inc. v. Brown.*[9] There, a New York injunctive procedure designed to prevent the sale of obscene books was upheld, where the statute provides for a hearing within one day after joinder of issue, and the judge must hand down his decision within two days of the end of the hearing. In addition, any restraint against sale is postponed until a judicial determination of obscenity following notice, and an adversary hearing.

The *Kingsley Books* and *Freedman* cases establish that the doctrine of prior restraint

1. *Chaplinsky v. New Hampshire,* 315 U.S. 568, 571, 62 S.Ct. 766, 769, 86 L.Ed. 1031, 1035; *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498.

2. *Roth v. United States,* supra note 1, 354 U.S. at p. 488, 77 S.Ct. at p. 1311, 1 L.Ed.2d at p. 1509.

3. 4 Bl.Comm. 151, quoted in *Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357.

4. *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 558, 559, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448, 459.

5. *Marcus v. Search Warrant,* 367 U.S. 717, 731, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127, 1136.

6. Supra note 4.

7. Id., 420 U.S. at p. 559, 95 S.Ct. at p. 1247, 43 L.Ed.2d at p. 460.

8. 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649.

9. 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469.

is vigorously applied in the area of obscenity, and specifically to books and films. Any system restraining First Amendment rights in these contexts must be limited by the procedural safeguards outlined in the *Conrad, Kingsley Books,* and *Freedman* cases. The essence of these safeguards is, as to any material sought to be withheld from publication, there must be a "prompt final judicial determination" as to obscenity. Where, as in this case, the exhibition of future films is prevented, the purpose of the safeguards is not only defeated, but flouted for films are restrained *without any determination at all* as to obscenity.

*Near v. Minnesota* [10] directly held that just such a law as exists in this case is an unconstitutional prior restraint, in violation of the First and Fourteenth Amendments. The Minnesota law allowed the state to enjoin as a nuisance, the operation of any newspaper or magazine publishing either obscene or scandalous material. Future issues could thus be enjoined based on past issues found to be offensive. The United States Supreme Court concluded, "This is of the essence of censorship."

The majority opinion attempts to rely on language in *Near v. Minnesota* creating "exceptions" to the prior restraint doctrine.[11] The language referred to is of course, pure dicta, and in no way supports the result in this case. As noted, ante, the United States Supreme Court has allowed limited censorship systems to exist in the area of obscenity, as long as adequate safeguards exist assuring "prompt judicial review" of alleged obscene material.[12] But the Court has *never* condoned the outright closure of an operation such as allowed in this case today.

*Times Film Corp. v. Chicago,*[13] cited in the majority opinion, furnishes no support for today's decision. That case involved a claim by the petitioner that Chicago's ordinance requiring submission of all films for examination prior to public exhibition was an unconstitutional prior restraint on its face. The Court held only that the statutory feature requiring the films to be produced at the office of the Commissioner for examination was not invalid on its face. The Court did not address the validity of any other features or standards in the ordinance. The Court's opinion furnishes no support whatsoever for the proposition a theater can be prevented from exhibiting all future films based on prior exhibition of obscene films.

The main opinion relies on *Cox v. New Hampshire*[14] to support the use of the licensing authority in revoking Gallery's license. *Cox* merely held a city could constitutionally require a parade license, so long as the discretion of the authority was limited to time, place and manner of the parade. Nothing in the opinion suggests the authority could prohibit all future parades regardless of their nature or their proposed time or place. That a state may legitimately regulate activities involving First Amendment rights does not mean it can also totally cut off these rights, as the main opinion allows.

*Paris Adult Theatre v. Slaton*[15] also fails to support the majority opinion. It held that States could constitutionally regulate the exhibition of obscene films in "adult" theaters, even though only consenting adults were present. No issue of prior restraint was presented in the case, since no restraint on the exhibition of the film was imposed until after a full judicial determination by the Georgia Supreme Court.

Contrary to the impression given in the majority opinion, there is no authority emanating from the United States Supreme Court approving the result in this case. In

---

10. Supra note 3.

11. See majority opinion, page 431.

12. *Southeastern Promotions, Ltd. v. Conrad,* supra note 4; *Freedman v. Maryland,* supra note 8; *Kingsley Books, Inc. v. Brown,* supra note 9.

13. 365 U.S. 43, 81 S.Ct. 391, 5 L.Ed.2d 403.

14. 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049.

15. 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446.

addition, as the cited cases in Mr. Justice Wilkins' dissenting opinion show, our sister states have overwhelmingly rejected such action as unconstitutional.

The doctrine of prior restraint has commanded the rapt attention of an impressive number of courts of last resort, since the time of Blackstone; as well it should. With today's decision, Utah alone disregards the judicial wisdom of all cases from the United States Supreme Court, and all cases from the courts of last resort in her sister states; which have addressed the doctrine of prior restraint. A position not only singular, but alarming.

WILKINS, J., concurs in the views expressed in the dissenting opinion of MAUGHAN, J.

WILKINS, Justice (dissenting):

I respectfully dissent.

Plaintiff brought this action seeking a declaratory judgment that defendant's[1] suspension of plaintiff's business, theater, and soft drink licenses was improper and, by an extraordinary writ, to arrest the implementation of the suspension. On plaintiff's motion for summary judgment the District Court of Salt Lake County ruled in favor of defendant.

On appeal plaintiff contends that defendant's suspension of plaintiff's licenses, based solely on a previous obscenity conviction, is an unconstitutional "prior restraint" on freedom of speech.

I find no meaningful distinction between defendant's license revocation in this matter and the use of a "nuisance" injunction to close a business based on prior obscenity conviction, which I addressed in my dissenting opinion in *Ogden City v. Eagle Books,* Utah, 586 P.2d 436 (1978), decided this date, and which I concluded was an unconstitutional incursion into free speech. In both instances the result is the same—an absolute prohibition on the distribution of presumptively protected material—and in both instances this result is constitutionally infirm.

Defendant bases its argument overwhelmingly on the case of *106 Forsyth Corporation v. Bishop,* 362 F.Supp. 1389 (M.D. Ga.1972), aff'd 482 F.2d 280 (CA5 1973), cert. denied 422 U.S. 1044, 95 S.Ct. 2660, 45 L.Ed.2d 696 (1974). Plaintiff admits that *Forsyth* supports defendant's contention but argues that *Forsyth* is an "aberration"; a characterization I believe to be correct.

*Forsyth* is contrary to all the cases decided before it[2] and has been specifically rejected by every court that has subsequently considered it.[3]

A subsequent Fifth Circuit case, *Universal Amusement Co. v. Vance,* 559 F.2d 1286 (CA5 1977) dealing with a nuisance injunction to close a theater after pornography conviction, reached a result contrary to *Forsyth.* The court in *Vance* clearly recognized the "prior restraint" problem and the *Vance* decision raises doubts as to the future vital-

**1.** Though several defendants are still technically parties, I shall refer to the defendant throughout singularly.

**2.** *People ex rel. Busch v. Projection Room Theater,* 17 Cal.3d 42, 130 Cal.Rptr. 328, 550 P.2d 600 (1976), cert. denied, 429 U.S. 922, 97 S.Ct. 320, 50 L.Ed.2d 289 (1976); *State ex rel. Ewing v. Without A Stitch,* 37 Ohio St.2d 95, 307 N.E.2d 911 (1974); *Kingsley Books, Inc. v. Brown,* 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957); *State ex rel. Cahalan v. Diversified Theatrical Corp.,* 396 Mich. 244, 240 N.W.2d 460 (1976); *General Corp. v. State ex rel. Sweeton,* 294 Ala. 657, 320 So.2d 668 (1975), cert. denied, 425 U.S. 904, 96 S.Ct. 1494, 47 L.Ed.2d 753 (1976); *Mitchem v. State ex rel. Schaub,* 250 So.2d 883 (Fla., 1971); *Sanders v. State,* 231 Ga. 608, 203 S.E.2d 153 (1974); *State*

*v. A Motion Picture Entitled "The Bet,"* 219 Kan. 64, 547 P.2d 760 (1976); *Gulf States Theatres of Louisiana, Inc. v. Richardson,* 287 So.2d 480 (La., 1974); *State ex rel. Field v. Hess,* 540 P.2d 1165 (Okla., 1975); *New Rivieria Arts Theatre v. State ex rel. Davis,* 219 Tenn. 652, 412 S.W.2d 890 (1967); *Near v. Minnesota ex rel. Olsen,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931); *Grosjean v. American Press Co.,* 297 U.S. 233, 56 S.Ct. 444, 80 L.Ed. 660 (1936); *Cantwell v. State of Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

**3.** *Alexander v. City of St. Paul,* 303 Minn. 201, 227 N.W.2d 370 (1975); *Hamar Theatres, Inc. v. City of Newark,* 150 N.J.Super. 14, 374 A.2d 502 (1977); *City of Delevan v. Thomas,* 31 Ill.App.3d 630, 334 N.E.2d 190 (1975).

ity of *Forsyth* even within the Fifth Circuit (though granting by the Court en banc of rehearing in *Vance* leaves resolution of this matter within that circuit unsettled).

MAUGHAN, J., concurs in the views expressed in the dissenting opinion of WILKINS, J.