**The STATE ex rel. PIZZA, Pros. Atty.,**

**v.**

**SMITH et al.**

Court of Common Pleas of Ohio,
Lucas County.

No. CI94–3418.

Decided April 13, 1995.

*Reñee Weaver*, Lucas County Assistant Prosecuting Attorney, for plaintiff Anthony G. Pizza, Lucas County Prosecuting Attorney.

*Stephen Pennington*, for defendants.

JUDITH ANN LANZINGER, Judge.

This case was heard on January 13, 1995 on plaintiff's motion for preliminary injunction. A temporary restraining order had been granted on December 20, 1994 and was continued by consent of the parties. After hearing on the motion for permanent injunction, the court found that the state had met the burden of proving that a nuisance existed at the lower unit of 3186 Glenwood, Toledo, Lucas County, Ohio, a property which defendants, Roland R. Smith and his wife, Janice A. Smith, owned for investment purposes. The state provided evidence of continuing felony drug activity which, under R.C. Chapter 3719, constitutes a "nuisance" as defined by R.C. 3767.01(C).

The defendants, however, dispute that the state proved they had any knowledge of drug transactions which occurred at the lower unit of their property. Both testified they first became aware of drug activity sometime after December 12, 1994, when they were served with the Complaint to Abate Nuisance and Application for Preliminary Injunction and Temporary Restraining Order in this case.

At the court's request, both parties furnished briefs on the issue of knowledge, or scienter. The TRO was continued meanwhile.

I

Detective Robert Marzec, who testified for the state of Ohio at hearing, stated he had supervised an undercover drug buy at the lower unit of 3186 Glendale on March 3, 1994. On March 6, 1994, a search warrant for the residence was obtained. While executing the search warrant, police broke out windows on the apartment. Ten pieces of crack cocaine were confiscated from the property on that date.

Detective Daniel Navarre testified that he went to the residence on August 9 during investigation of a homicide of a next-door neighbor. Roland Smith was at the Glenwood address that day. Navarre knew Smith, and Smith remarked that he was not there to purchase drugs but to collect rent on his property. Navarre entered the open door of the lower unit and watched as an occupant threw a bag of crack cocaine on the floor. Roland Smith was present when his tenant, Robert Strickland, was taken into custody. Strickland was later convicted for possession of crack cocaine. Additional drug buys occurred at the property on October 20, 1994 and November 8, 1994. During execution of a search warrant obtained on November 14, 1994, more crack was discovered. This specific complaint to abate the nuisance was filed on December 12, 1994. A TRO was granted December 13, 1994, and the property was padlocked.

Mrs. Smith testified she has never been to the Glenwood address. Roland Smith testified he regularly collected rent the first of the month in cash from his tenant, Robert Strickland. Smith could not answer specific questions about search warrants at his property, but acknowledged that he was the only one who did maintenance work and that the windows knocked out by the police were repaired. He also admitted knowing that someone was arrested there on August 9, 1994. Smith never evicted Robert Strickland, and the last time he had been to the property, Strickland was gone.

## II

Defendants acknowledge that while the state may have shown existence of a nuisance under R.C. Chapter 3767, there is no proof that they, as owners, knew of the drug activity occurring at their Glenwood property. Defendants rely on *State ex rel. Pizza v. Carter* (1993), 63 Ohio Misc.2d 235, 622 N.E.2d 1194, as support for their position that actual knowledge is an element needed to be proved before an injunction is granted. The state responds that the defendants' knowledge is irrelevant to issuance of a permanent injunction when a nuisance is proven. It maintains that an abatement action such as the one at issue is not a constitutional taking and, finally, if the court requires evidence of defendants' knowledge, that it has already met the standard of clear and convincing evidence.

After thorough review of the statutes and cases cited, the court finds in favor of the state on these matters.

## III

The parties agree that R.C. Chapter 3767 controls this case, which sets forth the procedure that must be followed in order to abate a nuisance. R.C. 3767.02 states that among those who may be enjoined are "[a]ny person, who uses, occupies, establishes, or conducts a nuisance, or aids or abets therein, *and the*

*owner,* agent, or lessee of any interest in any such nuisance * * *." (Emphasis added.)

◼ Due process requires a hearing before any action is taken to abate a nuisance and, consequently, R.C. 3767.04 affords a procedure to be used. In pertinent part, subsection (B)(3), relating to temporary injunctions, provides:

" * * * If, upon hearing, the allegations of the complaint are sustained to the satisfaction of the court or judge, the court or *judge shall issue a temporary injunction* without additional bond *restraining the defendant* and any other person from continuing the nuisance. Except as provided in division (C) of this section, if at the time of granting the temporary injunction it further appears that the person owning, in control, or in charge of the nuisance so enjoined had received five days' notice of the hearing and *unless that person shows to the satisfaction of the court or judge that the nuisance complained of is abated or that he proceeded forthwith to enforce his rights under section 3767.10 of the Revised Code * * *.*" (Emphasis added.)

This section continues immediately to direct what must happen if an owner does not show either abatement or action taken under R.C. 3767.10 to cancel a lease:

" * * * *[T]he court or judge forthwith shall issue an order closing the place* against its use for any purpose of lewdness, assignation, prostitution, or other prohibited conduct *until a final decision is rendered on the complaint for the requested permanent injunction. * * *"* (Emphasis added.)

As defendants point out, one court of appeals has concluded that to obtain an abatement order, the relator needed to prove by clear and convincing evidence that a defendant homeowner knew of and either acquiesced to, or participated in, felony drug offenses at the property in question. *State ex rel. Freeman v. Pierce* (1991), 61 Ohio App.3d 663, 671, 573 N.E.2d 747, 752; *State ex rel. Pizza v. Carter* (1993), 63 Ohio Misc.2d 235, 622 N.E.2d 1194. The *Freeman* decision was premised in part on *State ex rel. Ewing v. Without a Stitch* (1974), 37 Ohio St.2d 95, 66 O.O.2d 223, 307 N.E.2d 911, which considered issuance of an injunction to stop the exhibition of obscene films. First Amendment issues involved in *Ewing* required that knowledge of a film's obscenity be shown before a permanent injunction could be issued against the theater owner. The Supreme Court of Ohio has suggested, however, by adopting another appellate decision as its own, that where First Amendment rights are not at issue, *Ewing* has "scant" precedential value. See *State ex. rel Rear Door Bookstore v. Tenth Dist. Court of Appeals* (1992), 63 Ohio St.3d 354, 363, 588 N.E.2d 116, 124.

In fact, a property closure of the type under discussion has been upheld even when the property owner was not listed as a party to the nuisance abatement

action and, in fact, had already ousted the tenant responsible for the nuisance. *State ex. rel. Wolfe v. Close* (1990), 50 Ohio St.3d 268, 553 N.E.2d 668. In the *Wolfe* case, the court noted that the statutes contemplated imposition of sanctions against an owner who had not actually been charged with maintaining the nuisance, and that the statutes provided a remedy for the owner after the injunction under R.C. 3767.04, 3767.06, and 3767.08. For example, R.C. 3767.04(C) provides:

"The owner of any real or personal property closed or restrained or to be closed or restrained may appear in the court of common pleas between the time of the filing of the complaint for the permanent injunction described in division (A) of this section and the hearing on the complaint, and, if all costs incurred are paid and if the owner of the real property files a bond with sureties approved by the clerk, in the full value of the real property as ascertained by the court or, in vacation, by the judge, and conditioned that the owner of the real property immediately will abate the nuisance and prevent it from being established or kept until the decision of the court or judge is rendered on the complaint for the permanent injunction, the court or judge in vacation, if satisfied of the good faith of the owner of the real property and of innocence on the part of any owner of the personal property of any knowledge of the use of the personal property as a nuisance and that, with reasonable care and diligence, the owner of the personal property could not have known of its use as a nuisance, shall deliver the real or personal property, or both, to the respective owners and discharge or refrain from issuing at the time of the hearing on the application for the temporary injunction any order closing the real property or restraining the removal or interference with the personal property. The release of any real or personal property under this division shall not release it from any judgment, lien, penalty, or liability to which it may be subjected."

Mr. and Mrs. Smith therefore have a statutory remedy after the injunction is entered. If they can meet the provisions of R.C. 3767.04(C), their property may be released to them.

The state has established existence of the nuisance at 3186 Glenwood. It has also proved, by clear and convincing evidence, that one of the defendants, Roland R. Smith, had knowledge of the drug activity occurring at least as early as August 9, 1994. That day he met Detective Navarre and commented he was not going to the Glenwood address to buy drugs, but to collect rent. Mrs. Smith herself did not even set foot on the property because of its location. This general reputation evidence which the state presented is relevant. In R.C. 3767.05, evidence of the general reputation of the place or of felony drug convictions stemming from the particular location (see R.C. 3719.10) is prima facie evidence

of both the nuisance itself and of knowledge of and acquiescence to or participation in maintaining the nuisance. Subsection (A) provides:

"(A) * * * In the civil action, evidence of the general reputation of the place where the nuisance is alleged to exist or an admission or finding of guilt of any person under the criminal laws * * * at the place is admissible for the purpose of proving the existence of the nuisance and is prima-facie evidence of the nuisance and of knowledge of and of acquiescence and participation in the nuisance on the part of the person charged with maintaining it."

■ Although the cases cited by defendants interpret the foregoing section to mean that proof of actual knowledge of the nuisance is required before a defendant may be enjoined, such an interpretation appears over-expansive in light of the other sections of R.C. Chapter 3767. It is thus important to look at the entire statutory scheme. Nuisance abatement statutes have been upheld as constitutional. *State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals* (1992), 63 Ohio St.3d 354, 588 N.E.2d 116; *State ex rel. Ewing v. Without a Stitch* (1974), 37 Ohio St.2d 95, 66 O.O.2d 223, 307 N.E.2d 911. There is no requirement that the state first prove that a property owner have knowledge before a permanent injunction issues.

■ Roland Smith took no steps to evict Robert Strickland or to stop the violations from occurring at the lower unit of his apartment building. If he had, under R.C. 3767.04(B)(3) he could have halted the injunction. He still has the possibility of recovering use of the lower unit by following the steps outlined in R.C. 3767.04(C). His actual knowledge of the nuisance itself is immaterial to the issuance of this injunction because R.C. 3767.05(D) is clear:

"(D) *If the existence of the nuisance is established* upon the trial of the civil action, *a judgment shall be entered that perpetually enjoins the defendant* and any other person from further maintaining the nuisance at the place complained of and the defendant from maintaining the nuisance elsewhere." (Emphasis added.)

Property owners may not allow tenants to use their apartment buildings as crack houses and then plead ignorance to avoid nuisance abatement. For this reason, the injunction will take effect as requested by the state pursuant to statutory authority.

*Judgment accordingly.*